EDGINGTON *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF IOWA.

No. 336. Submitted November 2, 1896. — Decided November 30, 1896.

Section 5438 of the Revised Statutes (codified from the act of March 2, 1863, c. 67, 12 Stat. 696) is wider in its scope than section 4746, (codified from the act of March 3, 1873, c. 234, 17 Stat. 575,) and its provisions were not repealed by the latter act.

On the trial of a person accused of the commission of crime, he may, without offering himself as a witness, call witnesses to show that his character was such as to make it unlikely that he would be guilty of the crime charged; and such evidence is proper for the consideration of the jury in determining whether there is a reasonable doubt of the guilt of the accused.

AT the March term, 1895, in the District Court of the United States for the Southern District of Iowa, Avington A. Edgington was tried and found guilty of the crime of making a false deposition on April 13, 1894, in aid of a fraudulent pension claim on behalf of his mother, Jennie M. Edgington, claiming to be the widow of Francis M. Edgington.

The indictment was based on section 5438 of the Revised Statutes of the United States, and it was claimed on behalf of

the defendant that that section had been repealed by the subsequent enactment of section 4746 of the Revised Statutes, and was no longer in force at the time the indictment was found. The motion to direct a verdict of not guilty for that reason was overruled, to which action of the court an exception was taken. Exceptions were also taken to the action of the court in excluding testimony as to the defendant's general reputation for truth and veracity, and to the instruction to the jury upon the testimony as to the good character of the defendant.

On April 30, 1895, judgment was pronounced against the defendant that he pay a fine of fifteen hundred dollars and the costs, and that he stand committed to jail until said fine and costs should be paid. A writ of error was prayed for and allowed.

*Mr. Smith McPherson, Mr. A. H. Garland* and *Mr. R. C. Garland* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendants in error.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

Section 5438 of the Revised Statutes makes it penal to make or cause to be made, for the purpose of obtaining or aiding to obtain payment or approval of any claim against the United States, any false deposition, knowing the same to contain any fraudulent or fictitious statement; and such offence is made punishable by imprisonment at hard labor for not less than one nor more than five years, or by fine of not less than one thousand nor more than five thousand dollars. The statute which was carried into this section of the Revised Statutes was enacted March 2, 1863. 12 Stat. 696, c. 67.

Section 4746 is based on a statute passed March 3, 1873, c. 234, § 33, 17 Stat. 566, 575, and provides a penalty of a fine not exceeding five hundred dollars, or of imprisonment for

a term not exceeding three years, or of both, for every person who knowingly or wilfully in anywise procures the making or presentation of any false or fraudulent affidavit concerning any claim for pension, or payment thereof, or pertaining to any other matter within the jurisdiction of the Commissioner of Pensions.

We are unable to accept the contention that the latter section is to be deemed a repeal of the former. Undoubtedly there is some ground that is common to both. Thus the procuring or causing to be made a false deposition or affidavit in promoting a fraudulent pension claim is made an offence by both statutes. But the earlier statute is wider in its scope, because not restricted to fraudulent pension claims, nor to merely procuring a false affidavit to be made. We think the offence charged in the present indictment, of making a false deposition in aid of a fraudulent pension claim, is properly within section 5438, and not within section 4746, which is in terms applicable only to the offence of procuring another person to commit the offence.

We are constrained to sustain the assignments which complain of the exclusion of testimony offered to show defendant's general reputation for truth and veracity. It is not necessary to cite authorities to show that, in criminal prosecutions, the accused will be allowed to call witnesses to show that his character was such as would make it unlikely that he would be guilty of the particular crime with which he is charged. And as here the defendant was charged with a species of the *crimen falsi,* the rejected evidence was material and competent. This, indeed, is conceded in the brief for the government; but it is argued that, as the learned judge, in overruling the offer of the evidence, observed that the testimony might "become proper later on," he was merely passing on the order of proof, his discretion in respect to which is not reversible. It is possible, as suggested, that the judge thought that such evidence should not be offered until it appeared that the defendant had himself testified. But this would show a misconception of the reason why the evidence was competent. It was not intended to give weight to the defendant's personal

testimony in the case, but to establish a general character inconsistent with guilt of the crime with which he stood charged; and the evidence was admissible whether or not the defendant himself testified. When testimony, competent and material, has been offered and erroneously rejected, the error is not cured by a conjecture that if offered at a subsequent period in the trial the evidence might have been admitted. It should also be observed that when a subsequent offer to the same effect was made the judge rejected it without qualification.

There was likewise error in that portion of the charge in which the judge instructed the jury as to the effect that they should give to the testimony showing the defendant's good character.

It is proper to give the judge's own language:

"Some testimony has been given you touching the good character of the defendant. When a man is charged with crime the courts of the United States permit this question of good character to be introduced to go to the jury. The theory, as I view it, is a wise one. If a man, in the community where he lives, by his incoming and outgoing among his neighbors, has built up in the years of his life, be they comparatively few or many, a character among them for good morals, which includes the uprightness and excellency of our general citizenship, it is right that the jury should know that fact. It is of value to them in conflicting cases in determining points in the case; and yet, gentlemen, I have to say to you that evidence of good character is no defence against crime actually proven. If the defendant in this case is proven guilty of crime charged, any good character borne by him in his community is no defence; it must not change your verdict; for the experience of mankind, of all of us, teaches us that men reputed to be of good moral character in a community unfortunately sometimes we find they are sadly different from that which they are reputed to be, and that they are committers of crime; yet the good character goes to the jury with special force wherever the commission of the crime is doubtful. If your mind hesitates on any

point as to the guilt of this defendant, then you have the right and should consider the testimony given as to his good character, and it becomes, as I have suggested, or may be of great importance in the minds of the jury in the matters of doubt."

To this portion of the charge the defendant's counsel took exception in the following terms: "We except to that part of the charge in stating the effect of good character, the defendant claiming that it should not be of force only in doubtful cases, but should be considered by the jury in connection with all of the evidence as to whether or not on all the evidence there is a reasonable doubt."

Some criticism is offered to the exception as made to the whole paragraph, and thus coming within cited cases, to the effect that exceptions are not well taken to an entire charge, or to large portions of a charge, if the instructions complained of are, as to some of them, sound.  There is a reasonable rule that if the entire charge is excepted to, or a series of propositions contained in it is excepted to in gross, the exception cannot be sustained if there were a distinct proposition or instruction given that was sound.  Waiving the question as to how far this rule is justly applicable to the case of a charge in a criminal case, we are of opinion that, in the present instance, the criticism is not well founded.  The paragraph of the charge excepted to does not contain instructions on separate and distinct propositions, some of which are sound and others not so.  The subject treated of in the paragraph is the single one of the proper effect to be given by the jury to the evidence of the defendant's good character.  A fair understanding of the meaning of the instruction cannot be reached without reading and weighing the entire paragraph. There would have been more room for just criticism had the defendant taken exception to sentences or phrases detached from their connection.

If formally correct, was the exception in question substantially well taken?  Was the charge, in the particular complained of, a correct exposition of the law?

It is impossible, we think, to read the charge without per-

ceiving that the leading thought in the mind of the learned judge was that evidence of good character could only be considered if the rest of the evidence created a doubt of defendant's guilt. He stated that such evidence " is of value in conflicting cases," and that if the mind of the jury " hesitates on any point as to the guilt of the defendant, then you have the right and should consider the testimony given as to his good character."

Whatever may have been said in some of the earlier cases, to the effect that evidence of the good character of the defendant is not to be considered unless the other evidence leaves the mind in doubt, the decided weight of authority now is that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing.

*Jupitz* v. *The People*, 34 Illinois, 516, was a case where the defendant was indicted for having received goods knowing them to have been stolen, and his counsel requested the trial judge to instruct the jury that the evidence of the good character of the defendant for honesty should have great weight in determining as to his guilt or innocence. This was qualified by the court by the addition of these words: " If the jury believe there is any doubt of his guilt." This was held to be error, and the Supreme Court of Illinois used the following language :

" The instruction as asked may be objectionable on account of the epithet great, but as that was not the ground of the qualification, but on the ground, as is inferable, that the court did not consider evidence of good character of any weight except in a doubtful case. The more modern decisions in criminal cases go to the extent that in all criminal cases, whether the case is doubtful or not, evidence of good character is admissible on the part of the prisoner. . . . We can hardly imagine a case where evidence of a good character was a more important element of defence than this, and in the lan-

guage of the instruction was entitled to great weight. Proof of uniform good character should raise a doubt of guilty knowledge, and the prisoner would be entitled to the benefit of that doubt. Proof of this kind may sometimes be the only mode by which an innocent man can repel the presumption of guilt arising from the possession of stolen goods. It is not proof of innocence, although it may be sufficient to raise a doubt of guilt. The court seemed to think it was entitled to no weight, unless, taking the language used in its most favorable aspect, there was doubt of his guilt. A strong *prima facie* case was made out by the prosecution, but it was not conclusive. If the court had told the jury that his good character should be taken into consideration by them, and was entitled to much weight, a reasonable doubt of the prisoner's guilt might have been raised which would have resulted in his acquittal."

Similar conclusions were reached in *Commonwealth* v. *Leonard*, 140 Mass. 470; *Heine* v. *Commonwealth*, 91 Penn. St. 145; *Remsen* v. *The People*, 43 N. Y. 6; *People* v. *Garbutt*, 17 Michigan, 29; Wharton on Crim. Law, vol. 1, § 636.

We find no errors disclosed by the other assignments.

*The judgment of the court below is reversed and the cause remanded with directions to set aside the verdict and award a new trial.*

MR. JUSTICE BREWER concurred in the judgment.

MR. JUSTICE BROWN dissented.