### POMERANTZ v. UNITED STATES. *
### No. 4549.

Circuit Court of Appeals, Third Circuit.

Aug. 21, 1931.

B. D. Oliensis, of Philadelphia, Pa., for appellant.

Paul Freeman, Asst. U. S. Atty., of Philadelphia, Pa., and Raymond S. Norris, Sp. Asst. to Atty. Gen.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

Pomerantz and others were convicted in the District Court for the Eastern District of Pennsylvania of conspiracy to violate the National Prohibition Act. The case is brought to this court on appeal by Pomerantz alone.

He and his codefendants were indicted on December 14, 1927, in the District of Delaware on the charge of conspiracy to violate the National Prohibition Act. On September 5, 1929, while the indictment was pending in Delaware, they were indicted for the same offense in the Eastern District of Pennsylvania. The defendants moved the court to quash the indictment then pending in the Pennsylvania district. The motion was denied. Thereupon the Attorney General elected to proceed in Pennsylvania and the defendants were accordingly brought to trial in that District. The indictment in Delaware was nolle prossed six days after the return of the indictment in Pennsylvania.

The appellant insists that the lower court was without power to entertain the indictment on which he was convicted, for the reason that at the time of the return of the indictment in Pennsylvania there was an indictment pending in the district of Delaware charging the same offense; that the "prior jurisdiction of the District Court for the District of Delaware was exclusive, and that as long as the indictment was pending there, no other federal court might take cognizance of the matter."

These contentions are answered by the Supreme Court in the case of Haas v. Henkel, 216 U. S. 462, 30 S. Ct. 249, 251, 54 L. Ed. 569, 17 Ann. Cas. 1112, wherein it was said:

*Rehearing denied November 5, 1931.

"But, if indicted in two or more districts, there must be an election as to where the defendant shall be tried. Primarily, this is the right and duty of the Attorney General, or those acting by his authority. * * *

"But if the fact be that the offense charged in both sets of indictments is identical, and that the locus of the conspiracy is laid in one set as in one district and in the other as in a different district, it is still for the government to determine in which of the two districts it will bring the accused to trial, and of the commissioner to determine whether a prima facie case has been shown that the accused had probably committed an offense in the District of Columbia, which was indictable and triable there."

The appellant's second objection is that the evidence is legally insufficient to warrant a conviction.

The government contends that the appellant was a party to a conspiracy to manufacture potable alcohol at the plant of the Rayon Silk Company of America, at Chester, Pa.; that the government thwarted the conspirators' original plan to use specially denatured alcohol, which is comparatively easy to redistill, and forced them to use completely denatured alcohol; that they devised a system to cover up their operations and the use of such large quantities of alcohol by organizing in Wilmington, Del., an alleged distributing company, called the "Delaware Distributing Company," to which they consigned truckloads of completely denatured alcohol; that, if a truck en route from Philadelphia, where the alcohol was obtained, to Chester, was seized and detained, it could easily be shown that the load was being carried to Wilmington, and the appellant was in charge of these "cover up" operations.

To support these charges, the government produced the following evidence: The appellant appeared at the office in Philadelphia of the manufacturer of stills and general equipment of denaturing plants on several occasions and participated in the negotiations for the installation of a denaturing plant for the Rayon Silk Company; that on August 2, 1926, he rented a portion of a building for the "Delaware Distributing Company" to store naval oils and alcohol, and used an alias in signing the lease, refusing to affix his own name; that nothing was ever stored in the space rented by the Delaware Distributing Company; that the appellant appeared at the place every few days to await telephone calls;

that he told one Smalley, whose concern occupied the remaining portion of the building, that (in the words of Smalley) "the alcohol would be moving through, and if anytime it was stopped on the road, if they called up about that, to let it come on through and telephone him at Chester and he would come down and take care of it, but he said when he came he was not to be known as Pomerantz; that I was to call him Mr. Stern; that he would use the name in calling up"; that the premises of the Rayon Silk Company were raided on September 10, 1926; that for several nights theretofore, when the plant was under observation, the government's agents had noted men within the plant scraping labels from drums that afterward proved to be containers of completely denatured alcohol; that immediately after the last of these observations the plant was raided, and the agents found on the floor of the plant parts of several labels which were fitted to the parts remaining on drums in the immediate vicinity and appeared to belong thereto; that on the labels there was written the name and address of the consignee, namely, "The Delaware Distributing Company, Wilmington, Delaware; that, after the raid, the lease of the Delaware Distributing Company was abandoned, but the appellant called at the building several times thereafter "to find out (from Smalley) if there were any inquiries for him, any officers there trying to find him"; that in October, 1926, a registered letter addressed to the Delaware Distributing Company was delivered, and, when Smalley advised the appellant on the telephone of its arrival, the appellant told him to give it back to the mail carrier and tell him that he had never heard of the Delaware Distributing Company.

This evidence, the appellant says, is equivocal, and equally as consistent with innocence as with guilt.

It is true that the evidence here is largely circumstantial, but the very nature of the offense of conspiracy usually requires that it be proved by such evidence. There is no inherent defect in circumstantial evidence which prevents it from producing persuasion. The evidence in this case forms an unmistakable chain of circumstances which compels the conclusion that the appellant entered into an agreement to do the things with which he was charged and which constitute conspiracy. The facts adduced do more than raise a suspicion of guilt. They exclude every other reasonable hypothesis.

The contention of the appellant that his acquittal of the charge of manufacturing intoxicating liquor exonerates him of the charge of conspiracy to commit the substantive crime is untenable. Rothman v. United States, 270 F. 31, 37 (C. C. A. 2), certiorari denied 254 U. S. 652, 41 S. Ct. 149, 65 L. Ed. 458; United States v. Anderson, 31 F.(2d) 436, 437 (C. C. A. 9). It is not necessary to show that he himself actually did anything to effect the object of the conspiracy. An overt act committed by any one of the conspirators makes all of them guilty.

The claim that the charge of conspiracy collapsed with the acquittal of the other defendants tried with the appellant is unsound, for the reason that the indictment alleges that he and his codefendants conspired "with divers other persons unknown" to commit the crime charged. The testimony supports the charge in the indictment, and is sufficient to prove that unknown persons assisted the appellant in carrying out the conspiracy. Donegan v. United States, 287 F. 641 (C. C. A. 2); Grove v. United States, 3 F.(2d) 965 (C. C. A. 4).

Finally, it is urged that, even if the conviction was warranted by the evidence, a new trial should be awarded for errors committed at the trial.

One of these alleged errors is that the trial court admitted a statement on the ground that it was a narrative of past events made by one Higgins, a codefendant, on the charge of conspiracy. This statement was: "We have been raided in Chester and the Pomerantz lease is all off." At the time this was admitted, Higgins was still on trial. If the testimony was admissible for any purpose, there is no error in refusing to strike it out while the case was still before the jury. The learned trial judge also warned the jury that the evidence could only be used if Higgins was linked with the conspiracy.

The appellant next complains of the instruction given by the trial court on the effect of the testimony of character witnesses. The instruction of the court was: "That's substantive evidence which you can take into consideration with the rest of the defense, and it is entitled to some weight in determining the guilt or innocence of the defendants as to whom it was brought."

The charge must be considered as a whole; and, if it is then not misleading, it is not erroneous. The above quotation should be considered in connection with the following: "Character testimony is substantive evidence; and is in itself sufficient to raise a reasonable doubt. That is correct if you feel that it is entitled to that much weight."

This charge on reputation for good character was, in fact, more favorable to the appellant than he had the right to demand. Kaufmann v. United States (C. C. A.) 282 F. 776; Edgington v. United States, 164 U. S. 361, 366, 17 S. Ct. 72, 41 L. Ed. 467.

We have carefully considered the other assignments of error, which have less merit than those discussed above, and find that the trial was without error.

The judgment is affirmed.