THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* VÍCTOR D. NEGRÓN VÉLEZ, Defendant and Appellant.

No. CR-67-107.     Decided June 28, 1968.

410

*Benicio Sánchez Castaño* and *Gustavo A. Del Toro Bermúdez* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant, Víctor D. Negrón Vélez, was accused and convicted of the offense of grand larceny and was sentenced to serve from one to ten years in the penitentiary.

Appellant raises in this appeal the question whether the testimony of an accomplice was corroborated, pursuant to the provisions of Rule 156 of the Rules of Criminal Procedure.[1] In other words, we must determine whether the evidence presented "without taking into consideration the testimony of the accomplice, tends *to connect* the defendant

---

[1] Rule 156 of the Rules of Criminal Procedure.

"A conviction may not be had on the sole testimony of an accomplice, unless it is corroborated by other evidence, which in itself, and without taking into consideration the testimony of the accomplice, tends to connect the defendant with the commission of the offense. This corroboration shall not be sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

with the commission of the offense." (Italics ours.) More specifically, we should determine what is meant by "to connect the defendant with the commission of the offense," and whether in this case the evidence, excluding the testimony of the accomplice, established such "connection." We conclude that it does. In addition, the refusal to give certain instructions to the jury is questioned. We conclude that the trial court did not err in refusing to give them, except one. The trial court erred in charging the jury on the proof of good reputation.

The testimony of the witnesses for the prosecution and for the defense established the following facts, summarized by the trial court without objection on the part of appellant's counsel:

1.—Daniel Ruano Monteagudo testified that he is engaged in the sale of used automobile parts; that about July 7, 1966, appellant went to his establishment to buy parts in a two-door, blue or light green Chevelle station wagon, "*El Camino*" model, opened at the back, license plate 123-909, 1964; that the witness liked it and negotiated its purchase for $900; which amount he paid next day with a check; that he received the key to the vehicle and the following day appellant gave him a vehicle license and a contract of sale. These documents corresponded to another used vehicle of the same model, but which had been involved in a collision. He testified that he did not buy two similar vehicles from appellant, but only one, which had not been involved in a collision and which was in a very good condition as it appears from its photographs, admitted in evidence.

2.—José Iguina Cabrera testified that he is the owner of a 1964 aqua green or blue Chevelle station wagon, "*El Camino*" model, which disappeared from the place it was parked in front of his house, on Tous Soto Street, near Osuna School, Reparto Baldrich, Hato Rey, Puerto Rico, on the night of June 30 to July 1, 1966; that he left it closed, but

with an additional key in an ash tray; that he notified the police; that on August 6, he accompanied Sergeant Arimont of the state police to Ruano's establishment and there he identified the vehicle which Ruano said he bought from the appellant; that he was able to open it with the key he carried; that the vehicle was operated with the key which he left in an ash tray, which he identified; that he identified the vehicle as his own, also, by (a) a "scratch" on the left side; (b) "peeling" in the chromium of the instrument board; (c) the corroded muffler; (d) some stains on the rear-view mirror; that the back part had been changed because the symbol of the College of Engineers was missing; the license plate was different; the gearshift lever was different, as well as the front hub caps; that the photographs taken of the vehicle purchased by Ruano, represented the vehicle which was the witness' property, that is, Iguina's; that they went to appellant's establishment with Ruano; that appellant said that he did not believe that the vehicle in question had been stolen, for he purchased it from a used vehicle dealer in Vega Baja, and it had been involved in a collision; that said vehicle had a value of $1,200 or $1,500 when it was stolen.

3.—Jesús Ramón Camerón Medina, the accomplice, said that about June 30, 1966, he had worked for six months in appellant's repair shop, in making repairs and, among other things, in mechanics; that he saw a 1964 Chevelle station wagon parked on Tous Soto Street, near Osuna School, in Reparto Baldrich; that "after one o'clock in the morning" (of July 1, 1966), he "pulled" the small window to open it from the inside, but he had to push it because when he tried to "start it directly" the contact points were burned; that he went to appellant's shop in a Hertz rented automobile, which appellant had furnished him, and appellant's brother and a watchman went with him in the rented automobile to help him tow the station wagon he was stealing in order to bring it to the aforementioned shop where the said appellant's

brother and himself changed the back part, because it had an emblem of the College of Engineers, the license and identification plates, substituting them with those of the identical station wagon which had been involved in a collision, which appellant bought in Vega Baja, and which the witness towed from there to appellant's shop. He said that he stole the station wagon in question because a week before appellant had told him that "if I stole a 1964 Chevrolet station wagon, '*El Camino*' model, he would give me in exchange a 1956 Chevrolet"; that he took appellant to see the station wagon before stealing it on or about June 26, 1966, and appellant told him that "it was the station wagon he needed"; that back at the shop appellant repeated the above-mentioned proposition with respect to the vehicle they had just seen; that when he finished the changes in the station wagon the night he stole it, he towed it to appellant's home, where he left it; that next day, which was Sunday, he went to appellant's shop and he saw the stolen station wagon there and that day appellant gave him the promised Chevrolet. On cross-examination he admitted having been formerly convicted of grand larceny, but that that case was on appeal; that he had not been accused for the foregoing facts; that the police had offered him immunity; he could not explain why he had said that he stole the vehicle during the night from Saturday to Sunday, when the date of the facts he indicated, July 1, 1966, was not Sunday; "that he testified because when the station wagon was seized, the defendant [appellant] told Lieutenant Andino that if they got Hugo and him [appellant] out, he, the defendant [appellant], was going to testify against the witness; that when Lieutenant Andino told him that the defendant [appellant] was accusing him of having stolen the station wagon, the witness says that since he did not believe it, he asked to be taken to a place where the defendant [appellant] could not see him because he wanted to hear what the defendant

[appellant] said; for that purpose they took him to a place where the defendant [appellant] could not see him and there the witness heard the defendant [appellant] saying to the police . . . that if they got Hugo and the defendant [appellant] out of the 'mess', the defendant [appellant] would testify against Camerón Medina; that it was then when he, witness Camerón Medina, decided to testify in this case."

The sworn statement given by this witness before the prosecuting attorney who represented the State in this prosecution, indicates that the pertinent legal warnings were given by the prosecuting attorney before testifying; he signed it after he was arrested. When the witness was asked whether the prosecuting attorney gave such warnings, he answered "they granted me immunity." Said prosecuting attorney testified in connection with such warnings that ". . . when the witness gave that statement in writing he had already been interviewed by me personally, we had instructions and had granted him immunity, and it was not necessary to make those warnings you are talking about."

4.—Wilfredo Hernández Rivera testified that he worked as night watchman in appellant's shop in July 1966; that one evening during that month, Camerón appeared in a white vehicle, at about three or four o'clock in the morning and invited him to help him tow a vehicle; that he and Hugo, appellant's brother, accompanied Camerón to tow a Chevelle station wagon parked near Osuna School to the said shop where Hugo and Camerón remained repairing it; that some days before he had seen in that business a Chevelle station wagon hit on the front, which was identical with the one they towed; that next day neither of the two station wagons were in the shop.

5.—Rogelio Cubano Caballero testified that he had an automobile repair and sale shop in Vega Baja; that about June 1966 he sold a 1964 aqua blue or green Chevelle station wagon, *"El Camino"* model, to appellant; it had been hit

on the front; that the purchase order and the vehicle's license which he gave appellant were the ones which Ruano testified having received from appellant when the latter sold the stolen station wagon to him; he said that the latter was the same as the one sold by the witness to appellant, except that the latter had been involved in a collision.

The evidence for the defense was the following:

1.—Senator Pedro Juan Barbosa Sánchez testified that he has known appellant for about 20 years; that appellant's reputation is that of an honest working man and his parents are distinguished persons.

2.—Pedro Ortega, Jr., purchaser of Ibec Housing Corporation, testified also on appellant's good reputation of irreproachable honesty.

3.—Another character witness was Héctor del Castillo.

4.—Hugo Negrón Vélez said he was appellant's brother; that on or about June 31, 1966, Camerón Medina went to look for him, as well as one called El Cano, since the night watchman of appellant's shop was not there; they went out with Camerón Medina to look for and tow to the shop a vehicle located in front of Osuna School in Baldrich; that when they returned, the witness and El Cano went to sleep.

5.—Police Lieutenant Andino Rivera denied having offered immunity to Camerón.

6.—The clerk of the trial court testified that from the record of the case of *People* v. *Camerón*, it does not appear that the latter appealed from the judgment of conviction; that the term to appeal had expired.

7.—Appellant testified the following:

That he sold the collided station wagon acquired in Vega Baja to Ruano, to whom he delivered the contract of sale and the license to which the latter referred and which were admitted in evidence as the documents which appellant informed Ruano corresponded to the stolen station wagon; that he also sold to Ruano this last vehicle which he acquired

from Camerón; that he told Sergeant Arimont that he had sold both station wagons to Ruano and not the one he acquired from Camerón only; he denied having sent the latter to steal it.

8.—As rebuttal witness Sergeant Arimont testified that during the investigation in this case, appellant told him, when Arimont talked to the former about the stolen vehicle, that he had sold a motor vehicle to Ruano; that he had never told him that he had sold more than one.

The instructions of the trial judge to the jury with respect to the need for evidence of corroboration of the testimony given by accomplice Camerón were to the effect that accomplice Camerón's testimony should be corroborated. For that purpose the court read to the jury the text of Rule 156 of the Rules of Criminal Procedure. They were informed that pursuant to this Rule the conviction of a citizen does not lie on the sole testimony of an accomplice, unless the accomplice's testimony is corroborated by any evidence which connects the defendant with the commission of the offense; that in order to determine whether the testimony of an accomplice has been corroborated, the accomplice's testimony should be disregarded as a whole; once the testimony of the accomplice is disregarded as a whole and the evidence analyzed, it must be determined whether the existing evidence is sufficient to connect the defendant with the commission of the offense; that that evidence need not show defendant's guilt; that it is only necessary to connect him in any manner with the commission of the offense.

The trial court added that:

"If you come to the conclusion that the evidence offered, without taking into consideration the testimony of the accomplice, if you would come to the conclusion that that evidence connects the defendant with the commission of the offense, then the accomplice's testimony has been corroborated and it is then that the testimony of the accomplice should be considered as the

testimony of any other witness, in order to decide whether the defendant is innocent or guilty of the offense charged against him."

1–2.—Appellant alleges that the trial court erred in denying the peremptory acquittal requested, since the corroborating evidence does not connect appellant with the commission of the offense charged.

What is meant by the provisions of Rule 156 of the Rules of Criminal Procedure, when it says "other evidence which in itself and without taking into consideration the testimony of the accomplice, tends to connect the defendant with the commission of the offense?" What is the precise scope of the term "to connect"?

Although corroborating evidence should raise something more than a mere suspicion against the defendant, it need not go so far as to establish by itself and without the aid of the testimony of the accomplice, that the defendant committed the offense charged. We have repeatedly held that corroborating evidence need not be direct, nor strong, provided it is sufficient to connect the defendant with the commission of the offense. *People* v. *Rodríguez Hernández,* 91 P.R.R. 176, 195 (1964); *People* v. *Adorno,* 81 P.R.R. 504 (1959); *People* v. *Palóu,* 80 P.R.R. 351 (1958); *People* v. *Portalatín,* 72 P.R.R. 145 (1951); *People* v. *Rosario,* 68 P.R.R. 526 (1948). The evidence required for corroboration of an accomplice's testimony need not corroborate the accomplice as to every fact to which he testifies; it is sufficient if it does not require interpretation and the direction from that testimony tends to connect the defendant with the commission of the offense in such a way as may satisfy the jury that the accomplice is telling the truth; it must tend to implicate the defendant and, therefore, must relate to some act or fact which is an essential element of the offense, but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense

charged. *People* v. *Luker*, 407 P.2d 9 (Cal. 1965); *People* v. *Goldstein*, 303 P.2d 892 (Cal. 1965). In order to be sufficient for conviction, the evidence of corroboration of the testimony of an accomplice need not be strong, nor direct, it being sufficient only that the same tends to connect the defendant with the offense charged against him, especially if the testimony of the defendant has been produced in court and if he made certain admissions. *People* v. *Segarra*, 70 P.R.R. 458 (1949).

In the case before us there was evidence that appellant sold the stolen vehicle to witness Ruano Monteagudo for $900; that he gave him a license and a contract of sale as of said vehicle, when it belonged to a like vehicle acquired by appellant from another vehicle dealer called Rogelio Cubano Caballero; that he did not buy two vehicles from appellant, but only one. Appellant told Sergeant Arimont that he had sold to Ruano one motor vehicle, not two, as appellant testified. The owner of the stolen vehicle, José Iguina Cabrera, identified it as the one sold by appellant to Ruano, of which the back part, the license plates, and other things, had been changed, which agrees with the testimony of the accomplice to that effect; he testified further, that appellant told him that he did not believe that the vehicle in question had been stolen, for it was the one appellant acquired from Cubano Caballero. This could not be so because the witnesses who testified about both vehicles, confirmed that the vehicle acquired from Cubano Caballero had been involved in a collision, and the stolen one had not.

■ In our opinion, the foregoing evidence constituted the corroboration required by the aforesaid Rule 156, since "in itself" it connected appellant with the commission of the stealing of the motor vehicle.

It was proper, therefore, to deny the motion for peremptory acquittal for lack of corroboration of the testimony of the accomplice, since the record contained sufficient testimony which, if believed by the jury, was sufficient for corrobora-

tion. *People* v. *Tirado*, 69 P.R.R. 361 (1948). The trial court did not commit the first two errors assigned.

We shall proceed now to discuss the errors based on instructions to the jury.

■ The refusal to give specific instructions requested by the defense constitutes a prejudicial error which warrants the reversal of a judgment only if (1) the proposed instruction is correct; (2) it has not been substantially covered in the special or general instructions; and (3) it refers to a vital point in the case that failure to give it seriously deprives the defendant of an effective defense. *Phelps* v. *United States*, 252 F.2d 49 (5th Cir. 1958). With that rule in mind, we turn now to examine the contentions.

3.—The trial court did not err in refusing to give specific instructions on how the Immunity Act of 1954 (34 L.P.R.A. § 1476 *et seq.*) operates.

■ The instruction of the trial court is challenged in the sense that "under the constitutional system under which we are living, a person charged with the commission of an offense cannot be compelled to give self-incriminating testimony. It is a constitutional right granted to any person under investigation of the commission of a public offense. Now, then, the law grants certain powers to certain public officers such as the prosecuting attorneys of the People of Puerto Rico, so that if they deem it necessary, they can grant immunity to a person to serve as witness in a criminal proceeding," because the aforesaid Immunity Act does not operate in an automatic manner and that the jury should have been charged as to the motivations of the prosecuting attorney for offering immunity. We do not agree.

In *Suárez Sánchez* v. *Superior Court*, 92 P.R.R. 491, 501 (1965), footnote 4, we held that "If we were compelled to determine the constitutional validity of that act on the ground of the argument advanced by petitioner, we could reach no

other conclusion but that *the statute does not grant automatic immunity.*" However, neither the law nor the interpretation given in *Suárez, supra,* bars the prosecuting attorney from granting immunity to a witness he needs. We explain ourselves. The State may offer immunity to a criminal in a certain proceeding, if the latter honestly offers a complete testimony of the circumstances of the offense; in the prosecution of an accomplice, whether or not the latter is convicted. Immunity Act of 1954, 34 L.P.R.A. § 1476 *et seq.* Under the former Act, Act No. 13 of April 9, 1941, 34 L.P.R.A. § 1468, the immunity of a criminal who offered his testimony against his companion was of an automatic character. *Batalla* v. *District Court,* 74 P.R.R. 266 (1953). So that if after a person offers his testimony in a prosecution against his companion, said person were prosecuted for having incriminated himself in his testimony, he could successfully raise as a defense his right to immunity and would bar the prosecution. The present Act does not contain any provision which prevents the State from granting immunity under the circumstances it was granted in this case.

4.—It is alleged that the trial court erred in refusing to charge the jury on the contradictions incurred by accomplice Camerón in his testimony.

In the summary of the testimony of said witness the trial court stresses the aforesaid contradictions. Then it indicated that one of the means for challenging the credibility of a witness is by establishing that he has been convicted of the commission of a felony; that Camerón had been convicted of a felony, but that this does not mean that his testimony has to be discarded; that "It always remains in your consideration as trier of the facts to determine the degree of credibility that the witness may deserve, despite having been previously convicted for a felony."

Appellant did not object to said instruction nor did he request instructions as to the contradictions incurred by

Camerón in the course of his testimony. Neither did he request any explanation of any kind. It has been repeatedly held by this Court that errors in the instructions, which do not impair the fundamental rights of the defendant, are waived in not objecting the defense to such instructions. *People* v. *Iturrino de Jesús*, 90 P.R.R. 687 (1964) ; *People* v. *Pimentel Camacho*, 89 P.R.R. 132 (1963) ; *People* v. *Pacheco*, 83 P.R.R. 505, 511 (1961).

■ 5.—It is argued that the trial court erred in denying the instruction requested by the defense to the effect that "The mere possession of stolen objects is rather circumstantial evidence of the fact in connection with other evidence showing the elements of the offense, but which in itself is worthless as to defendant's guilt. The explained mere possession is not sufficient to support a conviction against the defendant."

The transmitted instruction substantially covers the point on the possession of stolen property, the need to explain it, and that it is insufficient in itself to justify the conviction of the defendant.

■ It is further argued that the court should have included in this instruction the explanation given by the appellant as to how he happened to be the owner of the stolen vehicle. This contention was not raised in the trial court. It is an afterthought. Moreover, it is harmless, since the trial judge referred to this question in his summary of appellant's testimony. The question was submitted to the jury as we said in *People* v. *Nieves Alvelo*, 89 P.R.R. 46 (1963).

We conclude, therefore, that the trial court did not commit said error.

6.—The trial court did not err in rejecting a requested instruction based on the fact that the prosecuting attorney did not introduce in evidence the check paid by Ruano to appellant for the stolen vehicle. The requested instruction

was to the effect that it should be assumed that such evidence was adverse to the case of the prosecuting attorney.

Appellant admitted having sold the stolen vehicle to Ruano for $900, and that he received a check from the latter in that amount in payment of its price. Therefore, we agree with the Solicitor General that:

". . . the insignificant detail as to whether the prosecuting attorney did not introduce in evidence a check object of the transaction with witness Ruano is not relevant with respect to appellant's guilt or innocence. The elements of proof of said transaction contributed by witness Ruano, as well as by appellant himself, are absolutely clear as to connecting appellant with the stolen station wagon. Moreover, the evidence as a whole on the obvious connection of appellant with the stealing perpetrated by accomplice Camerón, does not give rise to any doubt that the error is harmless and vague."

7.—It is alleged that the due process of law was violated when the police resorted to trickery, deceit, and illegal means, in order to obtain the testimony of an accomplice to whom they granted immunity, so that he would testify against appellant. This assignment lacks merit.

Appellant maintains, in support of this contention, that the accomplice was taken to police headquarters because he had been informed that appellant had told Lieutenant Andino that if he got appellant and his brother out of the mess, he would testify against the accomplice; that they took him to headquarters and put him in a room where appellant could not see him, but he [the accomplice] could see and hear him (the appellant); that he heard and saw appellant telling Lieutenant Andino that if they got him and his brother out of the "mess", appellant would testify against the accomplice, then he (the accomplice) accused appellant.

He maintains, further, that in order to obtain a testimony which incriminates a third party, the police in this case resorted to illegal means and violated all of appel-

lant's constitutional rights, as well as those of the accomplice, but that since the accomplice was granted immunity, it does not affect him so much, but it is important to appellant because he is suffering from the consequences of the "deceitful tactics of the police."

We agree that any type of physical or psychic coercion used to obtain the confession of a suspect or the testimony of a witness incriminating another is illegal, and therefore, inadmissible. *Miranda* v. *Arizona*, 384 U.S. 436, 446 (1966); *cf. People* v. *Portelli*, 205 N.E.2d 857 (N.Y. 1965). However, we do not believe that the facts of this case are sufficient to conclude that there was coercion of any kind. The only thing that appears from the transcript is that the accomplice was taken to the police station and placed in a room from where he saw and heard appellant saying that if they got him and his brother out, he (appellant) would serve as witness against the accomplice. That was not rebutted nor did they even seek to establish that it was a trap of the police, nor that the one who spoke was not appellant. It remained as evidence that it was appellant who first offered to testify against the accomplice if they offered to get him and his brother "out of the mess."

The arguments adduced by appellant in his brief that "we do not know and it does not appear from the record, how many times before the day he was taken to headquarters, the accomplice had been questioned by the police," are mere conjectures without any supporting evidence. It has never been held that the questioning of witnesses is illegal. The truth is that such questioning is undoubtedly an essential tool in effective law enforcement. *Haynes* v. *Washington*, 373 U.S. 503, 515 (1963).

8.—Appellant contends that the testimony given by Arimont to the effect that appellant told him that he had sold only one motor vehicle to Ruano should not have been admitted because it was not established that before giving said

testimony appellant was given a full warning of his constitutional rights; that the trial court abused its discretion in permitting said officer to testify.

██ The statement in question was given to Sergeant Arimont by appellant in the latter's business, in the course of the investigation of the larceny in question. Appellant had not been arrested nor was he under custody at that moment. The police officer went to appellant's business merely to investigate about the source of a vehicle which Ruano indicated had been sold to him by appellant. The evidence does not show that at that time the investigation had shifted to accusatory and was focused on appellant as the suspect in particular. *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746, 760 (1965). Therefore, it was not necessary to give appellant any warning prior to the questioning in the course of the investigation being carried out. *Mares* v. *United States*, 383 F.2d 811 (10th Cir. 1967).

In view of the foregoing circumstance, the testimony of Sergeant Arimont as rebuttal witness was admissible, since it was appellant in his direct testimony who referred to the fact that he had said to the sergeant that he had sold two vehicles to Ruano. Since appellant's credibility was a relevant matter, the prosecuting attorney could challenge it, as he did, introducing as rebuttal evidence the sergeant's testimony to the effect that appellant told him that he had sold only one vehicle to Ruano. *State* v. *Collins*, 150 N.W.2d 850, 859 (Minn. 1967).

9.—Appellant adduces that the trial court, in referring to the testimony of an accomplice convicted of felony, and whose credibility was challenged in relation to the essential and vital elements of the case, should have charged the jury that that testimony "should be scrutinized by you with great care and considered with great caution; caution means to foresee, exhort and/or notify danger." We do not agree with appellant.

In support of this assignment, appellant cites *Brickey* v. *United States*, 123 F.2d 341 (8th Cir. 1941); *Arnold* v. *United States*, 94 F.2d 499 (10th Cir. 1938); *Outlaw* v. *United States*, 81 F.2d 805 (5th Cir. 1936).

He argues also that such is the prevailing rule in California, under a provision similar to our Rule 156 of the Rules of Criminal Procedure. *People* v. *Dail*, 111 P.2d 723 (Cal. App. 1941).

■ The cases cited are not applicable. Under the Federal Rules of Criminal Procedure it is not necessary to corroborate the testimony of an accomplice. But in *Brickey, supra,* it was said that the court should advise the jury that it should weigh the testimony of the accomplice with care; that said testimony should be scrutinized and considered with great care and caution, but it may support a conviction even though it is uncorroborated. In California the Penal Code (§ 1111) requires not only the corroboration of the testimony of an accomplice, but also that the judge instruct the jury that such testimony ought to be viewed with distrust (West's Annot. Calif. Codes, Civil Procedure, § 2061). In jurisdictions where the corroboration of the accomplice's testimony is required only, it suffices that the jury be instrumented on that requirement of corroboration. *Bennett* v. *State*, 144 S.W.2d 476, 480 (Ark. 1940).

Finally, in *People* v. *Serrano Olivo*, 93 P.R.R. 725 (1966), we said that failure to give the instruction on caution (concerning the prosecutrix's testimony in a prosecution for sexual offense not covered by Rule 154 of the Rules of Criminal Procedure which requires the corroboration of the aggrieved woman's testimony) does not constitute reversible error "where the prosecutrix's testimony has been corroborated by direct or circumstantial evidence . . . or where, in the opinion of the appellate court, the verdict would not have been different because the evidence is convincing, is not sharply conflicting, and is not inherently improbable."

10.—Appellant contends that the trial judge erred in instructing the jury with respect to character evidence.

Character evidence may be presented to show that it was improbable that the defendant had committed the offense charged against him. This evidence considered with the other evidence in the case may create a reasonable doubt. Under certain circumstances such testimony of itself may raise a reasonable doubt with respect to defendant's guilt. *Michelson* v. *United States*, 335 U.S. 469 (1948); *Edgington* v. *United States*, 164 U.S. 361 (1896). However, this last rule is recognized only in the 7th and 10th circuits of the Federal Circuit Courts of Appeals, it having been rejected in the 2d, 3d, 4th, 5th, 6th, 8th, and 9th circuits. *People* v. *Drwal*, 188 N.E.2d 688, 691 (Ill. 1963). The explanation is given by Judge Learned Hand in *Nash* v. *United States*, 54 F.2d 1006 (2d Cir. 1932), where it was ruled as follows:

> "The judge's charge as to the character testimony was only that the jury should consider it along with the rest, remembering that a man with a good reputation might still commit crime; and this is challenged under the doctrine of *Edgington* v. *U.S.*, 164 U.S. 361. . . . That case [*Edgington, supra*] held no more than that *a judge should not confine the use of such testimony* [character testimony] *to the event that the jury was already in doubt*." (Italics ours.)

Where character evidence is introduced, the defendant is entitled to an instruction to the effect (1) that the purpose and function of such evidence is to raise a reasonable doubt; (2) that such evidence should be considered whether the effect of the other evidence in the case is clear or doubtful; (3) that when said evidence is considered with the other evidence, if a reasonable doubt is created as to defendant's guilt, he is entitled to be acquitted. *Salinger* v. *United States*, 23 F.2d 48, 53 (8th Cir. 1927).

It has been held that when the evidence has clearly established defendant's guilt, and the challenged instruction

constitutes a very brief part of a long charge, and the character evidence is meager, being limited to the testimony of three of appellant's business associates that his reputation for honesty and veracity and fair dealings is good, the fact that the instruction on character is erroneous in some aspect does not constitute a substantial prejudice to the rights of the defendant requiring the reversal of his conviction. *United States* v. *Kushner*, 135 F.2d 668 (2d Cir. 1943). In *Kushner, supra,* the charge was to the effect that "where the evidence is equally balanced in the minds of the jury, proof of good character might be determinative." It was urged that the court should have instructed the jury that the testimony of good character "alone and of itself may create in your minds the reasonable doubt." Although the court concluded that the requested instruction was supported by *Edgington, supra,* the judge was not required to adopt the precise words selected by appellant's counsel; that had the judge been content with merely leaving the weighing and effect of the character testimony to the jury, that would have been a sufficient statement of the applicable law. The court added that the instruction given conveys a negative implication contrary to the *Edgington* case, *supra,* for which reason such charge should not have been given, but this error was not substantially prejudicial. In *United States* v. *Minieri*, 303 F.2d 550, 555 (2d Cir. 1962), it was concluded that an instruction to the effect that the reputation testimony "may render the task of the Government a heavier one to prove guilt beyond a reasonable doubt, than would be the case if that reputation testimony had not been offered," although it did not conform to the doctrine established in *Edgington, supra,* and *Michelson, supra,* such charge, even though it could have been given with more clarity, was sufficiently explanatory of the effect reputation testimony has on the prosecution's burden of proof, so that in the light of the impressive evidence against *Minieri,* the defect in the instruction was neither so obvious

nor so prejudicial that it was made mandatory to excuse the failure timely to object at the time it was given. In *United States* v. *Haskell*, 327 F.2d 281, 286 (2d Cir. 1964), the objected instruction was: "On a doubtful question, good reputation alone might be of sufficient weight to raise a reasonable doubt as to the guilt of the accused." It was concluded that although the phrase "on a doubtful question" is too restrictive in view of the decision in *Edgington, supra*, and *Michelson, supra*, any error resulting from its inclusion was, in the circumstances of this trial, quite insubstantial. See, *Moore* v. *United States*, 254 F.2d 213, 221 (5th Cir. 1958).

In the case before us appellant requested that the jury be charged on reputation evidence to the effect that it should be considered (1) to establish that it is improbable that he committed the offense; (2) to determine, together with the other evidence, whether a person of good reputation is capable of committing the offense charged; (3) in view of the fact that the credibility of a witness for the prosecution has been challenged; (4) so that, if the accomplice's testimony is not believed, and taking into consideration the evidence presented including that of good reputation, the jury should acquit the defendant.

The trial court, instead of the foregoing instructions, charged the jury as follows:

"Gentlemen of the jury, during this trial several witnesses took the witness stand to testify on the good reputation of this defendant. That evidence, the evidence on good reputation would, in any case, be insufficient of itself to acquit a person who might have committed an offense. You, gentlemen of the jury, cannot consider it separately. You should connect it with the rest of the evidence, considering it jointly with all the evidence submitted during the trial. If from that consideration, in your opinion defendant's guilt is inferred, you cannot acquit him on the sole ground of defendant's good reputation. This, the proof of good reputation can, for example, *strengthen a reasonable doubt*

on defendant's guilt or innocence, but never considering it alone, but in consonance with the rest of the evidence admitted by the court." (Italics ours.)

From said charge the following statement is clearly erroneous, "the proof of good reputation can, for example, strengthen a reasonable doubt on defendant's guilt or innocence, but never considering it alone, but in consonance with the rest of the evidence admitted by the court." This necessarily minimizes greatly the reputation evidence, since its consideration in the case that reasonable doubt had already been created is really unnecessary, since in the presence of such doubt the jury should proceed to acquit. This is precisely the type of erroneous instruction which in *Edgington, supra,* gave rise to the reversal of the judgment in that case, as it was understood by Judge Learned Hand, in *Nash, supra.*

It is true that the inculpatory evidence was ample and convincing and that the character evidence was as meager as in *Kushner, supra,* but the aforesaid error in the instruction in this case was substantial and therefore, prejudicial to appellant's interests. Furthermore, it was essential that the judge instruct the jury that (1) such evidence, considered together with the rest of the evidence presented, may create a reasonable doubt; (2) is presented for the purpose of creating reasonable doubt, as for example, that it was improbable that defendant had committed the offense charged against him; and (3) that such evidence might be considered, irrespective of the fact that the effect of the rest of the evidence admitted is clear or doubtful.

Therefore, the judgment rendered in this case by the Superior Court, San Juan Part, on March 3, 1967, will be reversed and the case remanded for a new trial.

Mr. Chief Justice Negrón Fernández and Mr. Justice Hernández Matos did not participate herein. Mr. Justice Blanco Lugo dissented.