Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 24, 2003      Decided December 19, 2003

No. 03-3008

IN RE: SEALED CASE

Appeal from the United States District Court
for the District of Columbia
(No. 01cr00270–05)

*Leslie Ann Gerardo*, appointed by the court, argued the cause and filed the brief for appellant.

*Mary B. McCord*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *John R. Fisher, Thomas J. Tourish, Jr.* and *Alyse Graham*, Assistant U.S. Attorneys.

Before: GINSBURG, *Chief Judge*, and EDWARDS and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The appellant was convicted by a jury of one count of conspiracy to illegally purchase and unlawfully transport firearms, *see* 18 U.S.C. § 371, and one

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

count of unlawful transportation and aiding and abetting the transportation of firearms, *see id.* §§ 922(a)(3), 924(a)(1)(D), 2. The only substantial question on appeal is whether appellant suffered substantial prejudice as a result of the exclusion of character evidence of his reputation for truthfulness and honesty. The government concedes that the exclusion of the evidence was error as to the conspiracy count, and we agree in view of the purpose, means, and overt acts charged in the indictment as well as the expert evidence presented by the government. Whether the exclusion of such evidence also was error with respect to the unlawful transportation count is a closer question. We need not decide that question, however, for we hold that any error was harmless. *See Kotteakos v. United States*, 328 U.S. 750 (1946). The excluded evidence was cumulative of the character evidence before the jury and unlikely to overcome the strong evidence of appellant's guilt. Accordingly, we affirm the judgment of conviction.

## I.

The evidence showed that Special Agent Susan Poorbaugh, Bureau of Alcohol, Tobacco, and Firearms ("ATF"), began an investigation into an illegal firearm recovered in the District of Columbia and traced to a purchaser, Quentin Jackson, in Atlanta, Georgia. Agent Poorbaugh discovered that Jackson had purchased multiple firearms from various Atlanta dealers on October 31, 1998, January 8, 1999, and May 15, 1999, and that his roommate, Michael Jones, had also purchased multiple firearms on May 15, 1999 and July 3, 1999. Additional investigation traced the firearms purchased by Jackson and Jones to Thomas Bing, a District of Columbia native, and several of his associates, including appellant.

The indictment charged appellant and two others with one count of conspiracy to illegally purchase and unlawfully transport firearms, *see* 18 U.S.C. § 371, and various counts of unlawful transportation and aiding and abetting the transportation of firearms, *see id.* §§ 922(a)(3), 924(a)(1)(D), 2, of which appellant was indicted on two counts relating to events on January 8, 1999 and May 15, 1999. One defendant entered

into a plea agreement and a second defendant was found not guilty by the jury.

At the trial, the government introduced evidence that appellant was involved in a "straw purchase" scheme. Special Agent Joseph L. Bisbee, ATF, testifying as an expert in firearms trafficking, explained that, in "straw purchases," the ultimate purchaser will ask a third party to purchase a firearm so that either the ultimate purchaser will not be subject to a background check or the ultimate purchaser's name will not appear on the ATF Form 4473 required for all firearm purchases from licensed gun dealers. Pursuant to various plea agreements Bing, Jackson, and Jones testified regarding appellant's involvement in such a scheme whereby Jackson and Jones would purchase firearms for Bing and appellant, who would then transport the firearms to the District of Columbia for resale. Dwan Anderson, who was not charged with a crime relating to the ATF investigation underlying appellant's indictment and who testified under subpoena, corroborated the co-conspirators' testimony about events on May 15, 1999. Anderson testified that appellant traveled with Bing to Atlanta in May 1999 and that he saw appellant while there moving gun boxes from the back seat to the trunk of appellant's car. The government also introduced appellant's employment records from Hecht's department store in the District of Columbia, showing that in 1999 appellant did not work on January 7 or 8, left early on May 14, and did not work on May 15.

Appellant called a single character witness in defense. Gregory Archer, a retired Metropolitan Police Department ("MPD") homicide detective, who was then working as a background investigator for the MPD, testified that he had conducted an investigation of appellant's reputation in the community as a result of appellant's application for a position as a MPD police officer. In the course of his investigation Archer had spoken to 14–15 members of the community and all regarded appellant as "law abiding." Archer also testified that appellant had a reputation among other police officers as being "an outstanding young man" and "a law abiding young man." Further, Archer, who had known appellant since he

was five years old and knew that appellant's father was a sergeant in the MPD homicide branch, testified: "In my opinion, he is a law abiding young man, honest, responsible . . . ."

The jury found appellant guilty of conspiracy to illegally purchase and unlawfully transport firearms and of unlawful transportation and aiding and abetting the transportation of firearms on May 15, 1999, and not guilty of charges relating to January 8, 1999. The district court sentenced appellant to 22 months' incarceration, three years of supervised release, and 100 hours of community service.

## II.

On appeal, appellant's sole claim of error by the district court is its denial of his request to present character evidence regarding his reputation for truthfulness and honesty in the community. Appellant's defense counsel had argued to the district court that the government had put appellant's reputation for law-abidingness, truthfulness, and honesty at issue by charging him with participating in a conspiracy where appellant aided in the preparation of false statements filed with licensed gun dealers. Trial and appellate counsel maintain that character testimony regarding these separate character traits was admissible, notwithstanding appellant's decision not to testify, because the charges were analogous to fraud cases. The district court ruled that while character evidence regarding appellant's reputation for law abidingness would be admissible on all counts, character evidence regarding appellant's truthfulness and honesty would be inappropriate unless appellant testified.

This court reviews a district court's exclusion of character evidence for abuse of discretion. *See United States v. Bailey*, 319 F.3d 514, 517 (D.C. Cir. 2003); *United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997); *see also Michelson v. United States*, 335 U.S. 469, 480 (1948). If the evidence was improperly excluded, this court must then determine whether the error was harmless. *See Bailey*, 319 F.3d at 519; *Washington*, 106 F.3d at 1000. Where a non-constitutional trial error is involved, as here, the question is whether the error

"had substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos*, 328 U.S. at 776; *see also Washington*, 106 F.3d at 1000. To the extent that this court applied the *Chapman* standard in *United States v. Lechoco*, 542 F.2d 84, 88 (D.C. Cir. 1976), it was error. *See, e.g., O'Neal v. McAninch*, 513 U.S. 432, 437–38 (1995). As noted in *In re Sealed Case No. 97–3112*, 181 F.3d 128, 143–44 (D.C. Cir. 1999) (en banc) (Edwards, C.J. & Tatel, J., concurring) (discussing *Irons v. Diamond*, 670 F.2d 265, 268 n.11 (D.C. Cir. 1981)), a three-judge "panel may always . . . determine . . . that a prior holding has been superseded, and hence is no longer valid as precedent" without resorting to *en banc* endorsement, *id.* at 143 (quoting *Policy Statement on* En Banc *Endorsement of Panel Decisions* 2–3 (Jan. 17, 1996)).

## A.

Under Fed. R. Evid. 404(a), character evidence is inadmissible for the purpose of proving action in conformity therewith, except "[e]vidence of a pertinent trait of character offered by an accused. . . ." Fed. R. Evid. 404(a)(1). Courts have held that the general character trait of law-abidingness is pertinent to almost all criminal offenses. *See United States v. Daily*, 921 F.2d 994, 1010 (10th Cir. 1990); *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981); *see also* JOHN W. STRONG, MCCORMICK ON EVIDENCE § 191, at 674 (5th ed. 1999). Evidence on the specific character traits for truthfulness and honesty has been held admissible both when the defendant testifies at trial and the prosecution attacks the defendant's credibility, and when the defendant is charged with an offense in which fraud or falsehood is one of its statutory elements. *See Edgington v. United States*, 164 U.S. 361, 363–64 (1896); *Lechoco*, 542 F.2d at 88; *Hewitt*, 634 F.2d at 279; *United States v. Darland*, 626 F.2d 1235, 1237 (5th Cir. 1980); *Carnley v. United States*, 274 F.2d 68, 69 (5th Cir. 1960); *see generally Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967). *Edging*ton, 164 U.S. 361, is an example of the latter situation. In that case, the defendant was charged with making a false deposition in aid of a fraudulent pension claim. *Id.* at 363. The Court rejected the argument that character

evidence of the defendant's reputation for truth and veracity was admissible only if the defendant testified, and held that because the crime charged was a species of the *crimen falsi*, i.e., a crime involving some element of dishonesty or false statement, BLACK'S LAW DICTIONARY 379 (7th ed. 1999), such evidence was "material and competent" to show a general character inconsistent with the crime, *id.* at 363–64, which, "when considered with other evidence in the case, may generate a reasonable doubt," *id.* at 366.

The language of Rule 404(a)(1) extends beyond cases in which the defendant's reputation for truthfulness and honesty is relevant because the defendant testifies or is charged with a *crimen falsi*. *See Lechoco*, 542 F.2d at 88. Illustrative of the flexible application of the rule, the court held in *Lechoco* that testimony regarding the defendant's reputation for truthfulness may be "particularly pertinent" even where a defendant, who is charged with an offense in which his honesty or truthfulness is not a statutory element, does not testify. *Id.* There, the defendant had presented an insanity defense to the charge of kidnaping. During cross examination of the defendant's medical experts, the prosecutor brought out that their opinions were premised on the truthfulness of the defendant's statements during psychiatric interviews. *Id.* at 86–87. The court held that by raising the issue of the defendant's credibility, the prosecutor had "opened the door for the defendant to introduce testimony as to his reputation for truth and veracity." *Id.* at 88.

Appellant contends that he was charged with an offense of *crimen falsi* because the indictment alleged that he participated in a conspiracy where he aided his co-conspirators in falsifying documents. While no circuit has held that truthfulness and honesty are relevant to conspiracy to illegally purchase firearms, we agree with the parties that the circumstances here are analogous to cases involving fraud or false statements in which courts have held that such character evidence is admissible. *Edgington*, 164 U.S. at 363–64; *see also Daily*, 921 F.2d at 1011; *Hewitt*, 634 F.2d at 279. The charges in appellant's indictment are premised on the filing of false statements. The indictment states that the object of the

conspiracy was "to acquire firearms and money by obtaining, through straw purchasers . . . firearms in the State of Georgia." In describing the ways, manner, and means of the conspiracy, the indictment alleged that:

> It was part of the conspiracy that co-conspirators who were lawfully eligible to purchase firearms in the State of Georgia, would knowingly make false and fictitious written statements to licensed federal firearms dealers, to the effect that they were the actual buyers of the firearms, when in truth and fact, they purchased the firearms for other co-conspirators who could not lawfully purchase the firearms. . . .

Among the overt acts listed in the indictment are events occurring on May 15, 1999, when two unindicted co-conspirators each allegedly executed a ATF Form 4473, "signifying that they were the actual buyers of the firearms . . . whereas in truth and fact, they purchased the firearms for [appellant] and another co-conspirator not indicated herein. . . ."

Although the indictment did not charge appellant with making the false statements himself, it charged him with participating in a conspiracy in which he "recruited" eligible firearm purchasers to "knowingly make false and fictitious statements" in order to purchase firearms that he had paid for and selected. The government's evidence at trial, particularly Agent Bisbee's expert testimony, was aimed at demonstrating that appellant and Bing had enlisted Jackson and Jones to falsify the ATF forms. Because the indictment and the government's proof of the conspiracy made appellant's truthfulness and honesty a part of the charged conspiracy, and thereby invited appellant to introduce character evidence for those traits, *see Edgington*, 164 U.S. at 363–64, we hold that the district court erred in ruling that appellant's character evidence regarding his truthfulness and honesty was inadmissible on the conspiracy count. *Cf. United States v. Bayless*, 940 F.2d 300, 304 (8th Cir. 1991). Whether the district court also erred in excluding character evidence re-

garding appellant's honesty and truthfulness with respect to the unlawful transportation count, 18 U.S.C. §§ 922(a)(3), 924(a)(1)(D), 2, is a far closer question, as appellant's counsel acknowledged during oral argument. Although appellant contends that honesty and truthfulness are pertinent traits because "willfulness" is an element of the crime, 18 U.S.C. § 924(a)(1)(D), it is unclear, as defense counsel acknowledged in the district court, that the offense involves any element of fraud or false statement, and appellant points to no other ground for admission. The court need not decide this question, however, for any error in exclusion of the evidence was harmless.

**B.**

The nature of any prejudice to appellant as a result of the exclusion of character evidence on his truthfulness and honesty arises both from the government's expert evidence on "straw purchases" in support of the allegations in the indictment that appellant and Bing hired Jackson and Jones to make false statements, and from the closing argument in which the prosecutor referred to the co-conspirators' agreement to have others lie on the ATF forms. As appellant maintains, "[t]o believe the government's witnesses, the jury necessarily had to believe that appellant was the type of person who would knowingly connive with others to purchase guns through the use of false statements and certifications." Appellant's Brief at 26. Consistent with the district court's evidentiary ruling, appellant was unable to present evidence of these character traits or to argue their relevancy during his closing argument to the jury. Nevertheless, we can conclude with "fair assurance," *Kotteakos*, 328 U.S. at 765, that the exclusion of character evidence of appellant's reputation for truthfulness and honesty was harmless because it did not have a "substantial and injurious effect or influence in determining the jury's verdict," *id.* at 776, and therefore did not substantially affect appellant's substantial rights, *id.* at 764–65.

First, the excluded character evidence was cumulative of other good character evidence heard by the jury. *See Wash-*

*ington*, 106 F.3d at 1000. Appellant presented forceful character evidence to the jury on his reputation in the community. Archer testified as a trained criminal investigator, who had conducted an investigation of appellant's reputation for being law-abiding as part of his professional responsibilities and spoken with a number of members of the community and with MPD police officers about appellant's reputation. Archer's testimony was not limited to the community's view of appellant's reputation for law-abidingness. Rather, Archer testified that appellant had a reputation, particularly among other police officers, for not only being "a law abiding young man," but also being "an outstanding young man," which, to the extent that the latter phrase reflects a distinct character trait, is broader than the general character trait for law-abidingness. In addition, Archer, who testified both as an experienced police officer and a person who had known appellant for many years, stated that he personally believed appellant to be "a law abiding young man, honest, responsible...." The breadth of Archer's testimony thus challenged any assumption arising from the government's evidence that appellant's association with his co-conspirators and government co-operators proved that he was the type of person who would be criminally engaged. Indeed, the jury heard Archer's opinion that appellant was honest, and it was instructed that the evidence of appellant's "good reputation in the community for being ... law abiding ... may indicate ... that it is unlikely that a law-abiding person would commit the crime charged." Defense counsel's proffer to the district court of the testimony of the character witnesses that he wished to present did not indicate that Archer or the other witness would have covered new ground. Thus, further character testimony on appellant's reputation for truthfulness and honesty would have been cumulative.

Second, the government presented strong evidence of appellant's guilt. *See Washington*, 106 F.3d at 1000. Four witnesses identified appellant as accompanying Bing on the May 15, 1999 gun buying trip. Although the government's identification evidence consisted of the testimony of co-conspirators and government co-operators, their testimony

concerning appellant's involvement in the May 15, 1999 events was substantially similar. Jackson, Jones, and Anderson did not know appellant before he traveled with Bing to Atlanta and separately picked him out of a photo array. Jackson and Jones also gave detailed descriptions of how Bing and appellant selected and paid for several firearms. Anderson, who was not criminally charged with regard to this ATF investigation, corroborated much of the co-conspirator testimony. The jury was aware of the status of the government witnesses and their self-interest and was instructed to use caution and care in scrutinizing the testimony of accomplices. In addition, appellant's employment records were corroborative of evidence that he was in Atlanta, Georgia on May 15, 1999.

Contrary to an argument appellant makes in a single footnote, the prosecutor did not commit plain error during closing argument. *See United States v. Olano*, 507 U.S. 725, 731–37 (1993). The prosecutor did not suggest in closing or rebuttal argument that appellant was guilty because of such character traits as untruthfulness or dishonesty. Even assuming appellant's claim about the prosecutor's rebuttal closing argument, *see* Appellant's Brief at 25 n.15, is properly before the court, *see* Fed. R. App. P. 28(a)(9); *Terry v. Reno*, 101 F.3d 1412, 1415 (D.C. Cir. 1996), the prosecutor could properly respond in rebuttal to defense counsel's emphasis in closing argument on appellant's relationship to law enforcement, *cf. United States v. Young*, 470 U.S. 1, 14–20 (1985).

Accordingly, because the additional evidence of appellant's reputation for truthfulness and honesty would have been cumulative and unlikely to overcome the strong evidence of appellant's complicity in the May 15, 1999 events, we affirm the judgment of conviction.