UNITED STATES, Appellee,

v.

Sergeant Michael W. CLEMONS, U.S. Army, Appellant.

No. 43,415.

CM 441549.

U. S. Court of Military Appeals.

July 5, 1983.

For Appellant: *Captain Marcus C. McCarty* (argued); *Colonel William G. Eckhardt, Captain Thomas R. Peppler* (on brief); *Colonel Edward S. Adamkewicz, Jr., Major James F. Nagle, Major Raymond C. Ruppert* and *Captain Gary D. Gray.*

For Appellee: *Captain David A. Brown* (argued); *Colonel R.R. Boller, Lieutenant Colonel John T. Edwards, Captain Andrew D. Stewart, Captain Mark S. Julius* (on brief); *Colonel James Kucera* and *Captain Michael R. Smythers.*

*Opinion of the Court*

FLETCHER, Judge:

Appellant's conviction by court members at a general court-martial * is now before us by way of a grant of review. We are asked to determine whether he was prejudiced by the military judge's failure to admit evidence of his good military character and his character for lawfulness under Mil.

---

* Contrary to his pleas, appellant was found guilty of wrongful appropriation, larceny, and unlawful entry, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 934, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor for 6 months, forfeiture of $250.00 pay per month for 6 months, and reduction to E–1. The convening authority ap-

proved the sentence. [GCMO No. 31, dated October 26, 1981, erroneously reflects findings of Charge II as "Not Guilty of violation of Article 134, UCMJ." The correct finding is: "Not Guilty, but Guilty of a violation of Article 134, UCMJ." (R. 673.)] The Court of Military Review affirmed the approved sentence without opinion.

R.Evid. 404(a)(1). We hold that the ruling was erroneous, and we are unable to conclude that this error was harmless. Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a); *see United States v. Hewitt,* 634 F.2d 277 (5th Cir.1981). Our examination proceeds first to the facts of this case that demonstrate the contested evidence was pertinent to a proper resolution of the charges against appellant.

The findings in this case included conviction of unlawfully entering a barracks room, wrongfully appropriating a television set found therein, and stealing a cassette player. Appellant did not deny entering the unlocked barracks room or taking the television and the cassette player. Rather he asserted that, in order to secure the television and teach the room's occupants a lesson about securing property, it was taken from the room and placed in his office. Also to secure property the cassette player found in a latrine was placed in his office, and later inadvertently placed in his duffle bag following the termination of his duty. During all of these events appellant was on duty as Charge of Quarters the night of February 6 and 7, 1981.

Before defense counsel proceeded to his case-in-chief, trial counsel moved, *in limine,* to prevent introduction of evidence of appellant's general good character. Acknowledging that he intended to introduce evidence of appellant's good military character and character for lawfulness, defense counsel cited as authority for its production, Mil. R.Evid. 404(a)(1), which states:

Rule 404. *Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes* (a) *Character evidence generally.* Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

(1) *Character of the accused. Evidence of a pertinent trait of the character of the accused offered by an accused, or by the prosecution to rebut the same.*

(Emphasis in last sentence added.) Nevertheless, the military judge, granting the Government's motion, forbade testimony regarding appellant's good military character and his character for lawfulness, and permitted only evidence of his character for trustworthiness. The military judge stated:

All right. Before I get to that, as to the case you cited [*United States v. Hewitt,* 634 F.2d 277 (5th Cir.1981), discussed herein], I have read it, and I find that although they do say—state in there that "the character for lawfulness is admissible under the Rule 404," I do not find that that case is binding upon me, and I find that the finding of that appellate court is contrary to what I have been taught and my interpretation of the current rule, Military Rule 404, and in fact contrary to what the law should even be under the Federal Rules of Evidence. And since that is not an appellate court that is senior to this court, I find that although it is interesting and I found it enlightening to read the article, I do not find it binding in any way upon this court, and in fact I find it contrary to what our law is.

The military judge erred both in his misguided view of the applicability of federal precedent, *and* in his substantive rulings regarding Mil.R.Evid. 404(a)(1).

Dealing briefly first with the question of Federal precedent, we note that Mil.R.Evid. 101 states:

Rule 101. *Scope*

(a) *Applicability.* These rules are applicable in courts-martial ... to the extent and with the exceptions stated in rule 1101.

(b) *Secondary sources.* If not otherwise prescribed in this manual or these rules, and insofar as practicable and not inconsistent with or contrary to the Uniform Code of Military Justice or this Manual, courts-martial shall apply:

(1) *First, the rules of evidence generally recognized in the trial of criminal cases in the United States district courts; and*

(2) Second, when not inconsistent with subdivision (b)(1), the rules of evidence at common law.

(Emphasis in (b)(1) added.) The drafters of these rules have stated with respect to section (a) of the above rule:

The decisions of the United States Court of Military Appeals and of the Courts of Military Review must be utilized in interpreting these Rules. *While specific decisions of the Article III courts involving rules which are common both to the Military Rules and the Federal Rules should be considered very persuasive, they are not binding; see Article 36 of the Uniform Code of Military Justice. It should be noted, however, that a significant policy consideration in adopting the Federal Rules of Evidence was to ensure, where possible, common evidentiary law.*

(Emphasis added.) Analysis of the Military Rules of Evidence, Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition), Mil.R.Evid. 101(a). Commentary from the drafters, respecting provision (b) of the above rule indicates:

(b) *Secondary Sources.* Rule 101(b) is taken from paragraph 137 of the present Manual which has its origins in Article 36 of the Uniform Code of Military Justice. Rule 101(a) makes it clear that the Military Rules of Evidence are the primary source of evidentiary law for military practice. Notwithstanding their wide scope, however, Rule 101(b) recognizes that recourse to secondary sources may occasionally be necessary. Rule (b) prescribes the sequence in which such sources shall be utilized.

Rule 101(b)(1) requires that the first such source be the "rules of evidence generally recognized in the trial of criminal cases in the United States District courts." To the extent that a Military Rule of Evidence reflects an express modification of a Federal Rule of Evidence or a federal evidentiary procedure, the President has determined that the unmodified Federal Rule or procedure is, within the meaning of Article 36(a), either not "practicable" or is "contrary to or incon-

sistent with" the Uniform Code of Military Justice. Consequently, to the extent to which the Military Rules do not dispose of an issue, the Article III federal practice when practicable and not inconsistent or contrary to the Military Rules shall be applied. In determining whether there is a rule of evidence "generally recognized," *it is anticipated that ordinary legal research shall be involved with primary emphasis being placed upon the published decisions of the three levels of the Article III courts.*

(Emphasis in last sentence added.) Analysis, *supra*, Mil.R.Evid. 101(b). There is no inconsistency with military practice in the application of Federal precedent to the interpretation of Mil.R.Evid. 404(a)(1). Thus, we conclude that the military judge's expressed, but unjustified, opinion flies in the face of the scope of the Military Rules of Evidence, and does not pay sufficient deference to the application of Article III Federal court precedent.

It is entirely clear that had this military judge applied Federal precedent, he would have acknowledged clear legal precedent for admission in this case of evidence of appellant's character for lawfulness. *United States v. Hewitt, supra.* The common law made a distinction between general good character and particular traits of character. *See McCormick's Handbook of the Law of Evidence* § 191 at 455 (E. Cleary 2d ed. 1972); J. Wigmore, *A Treatise on the Anglo-American System of Evidence in Trials at Common Law* §§ 59 and 458 (3d ed. 1940); Wright and Graham, *Federal Practice and Procedure: Evidence* § 5236 at 382 (1978) (hereafter cited as Wright). At common law, "the prevailing and more practical view" excludes proof of "general good character." *McCormick's, supra* at 453. *United States v. Angelini,* 678 F.2d 380 (1st Cir. 1982), published subsequent to trial of the instant case, addresses admissibility of evidence of law-abidingness in light of Fed.R. Evid. 404. It concluded that "Rule 404 permits evidence of traits only" and "that evidence of a defendant's character as a law-abiding person is admissible." *Id.* at 382. As *Angelini* states: "Thus, the basic

issue is whether the character trait in question would make any fact 'of consequence to the determination' of the case more or less probable than it would be without evidence of the trait. *See* Fed.R.Evid. 401; *United States v. Staggs,* 553 F.2d 1073" (7th Cir.1977). *Id.* at 381.

In the instant case, it is clear that the traits of good military character and character for lawfulness each evidenced "a pertinent trait of the character of the accused" in light of the principal theory of the defense case. Mil.R.Evid. 404(a)(1). "The word 'pertinent' is read as synonymous with 'relevant'. *United States v. Staggs,* ... [*supra* at] 1075; 22 Wright & Graham, *Federal Practice and Procedure: Evidence* § 5236, at 383 (1978)." *United States v. Angelini, supra* at 381. The "Drafters' Analysis" to Mil.R.Evid. 404(a)(1) indicates that "[i]t is the intention of the Committee, however, to allow the defense to introduce evidence of good military character when that specific trait is pertinent." Analysis, *supra,* Mil.R.Evid. 404(a)(1). *United States v. Angelini* and *United States v. Hewitt,* both *supra,* make clear the admissibility of the specific trait of law-abidingness.

In not denying entry into the barracks room or taking the television and cassette player, defense counsel posited the theory that appellant, functioning as Charge of Quarters, was teaching his subordinates a lesson in security and personally securing the property in accordance with military responsibilities. We conclude that, to this end, the excluded evidence was entirely relevant and should have been admitted. Mil. R.Evid. 404(a)(1); *compare United States v. Angelini* with *United States v. Hewitt,* both

*supra.* In line with *United States v. Hewitt, supra,* we are unable to say that appellant was not prejudiced. Article 59(a), 10 U.S.C. § 859(a). Accordingly, the decision of the United States Army Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

EVERETT, Chief Judge (concurring):

I

Before the Military Rules of Evidence took effect in 1980, reception of character evidence in trials by court-martial was governed by this provision of the Manual for Courts-Martial:

To show the probability of his innocence, the accused may introduce evidence of his own good character, including evidence of his military record and standing as shown by authenticated copies of efficiency or fitness reports or otherwise and evidence of his general character as a moral, well-conducted person and law-abiding citizen. However, he may not, for this purpose, introduce evidence as to some specific trait of character unless evidence of that trait would have a reasonable tendency to show that it was unlikely that he committed the offense charged.

Para. 138*f*(2), Manual for Courts-Martial, United States, 1969 (Revised edition). *Accord* para. 138*f*(2), Manual for Courts-Martial, United States, 1951; para. 125*b*, Manual for Courts-Martial, United States Army, 1949.[1] Contrary to the practice that pre-

---

1. Paragraph 112*b*, Manual for Courts-Martial, United States Army, 1928, dealt with character evidence under the topic "*Direct and circumstantial evidence*." The rule stated there was:

   The accused may introduce evidence of his own good character, including evidence of his military record and standing in order to show the probability of his innocence, and if he does so the prosecution may introduce evidence in rebuttal.

   I have not located in the 1921 Manual a provision specifically authorizing admission of evidence of good character; but obviously it was

contemplated that such evidence would be admissible since that Manual provided:

   If the accused offers his own good character to show the probability of his innocence, the prosecution may dispute the fact of such good character by offering in rebuttal the reputation of the accused in his organization as to the bad quality in question.

   Para. 206, Manual for Courts-Martial, United States Army, 1921. Also, in paragraph 270, the 1921 Manual allowed a "certificate of discharge" to be "used by the defense, either before or after the findings, for proof of good character."

vailed at one time in most civilian courts, courts-martial could consider not only reputation evidence but also the opinions of the character witnesses based on their contact with the person whose character was in issue. Para. 138f(1), Manuals, *supra.*

The willingness of courts-martial to receive evidence of an accused's good character is quite understandable. As we noted in *United States v. Browning,* 1 U.S.C.M.A. 599, 601, 5 C.M.R. 27, 29 (1952), "Wigmore goes so far as to say that evidence of good soldierly character is even stronger than the customary evidence of good general character. Wigmore, Evidence, 3d ed., § 59." Dean Wigmore's rationale was that: [2]

> The soldier is in an environment where all weaknesses or excesses have an opportunity to betray themselves. He is carefully observed by his superiors,—more carefully than falls to the lot of any member of the ordinary civil community; and all his delinquencies and merits are recorded systematically from time to time on his "service record," which follows him throughout his army career and serves as the basis for the terms of his final discharge.

Courts-martial were not unique in admitting evidence of general good character. As Dean Wigmore observed: "Doubtless in practice Courts often are liberal in permitting the defendant to offer his general character." J. Wigmore, *A Treatise on the Anglo-American System of Evidence in Trials at Common Law* § 59 (3d ed. 1940).[3] A court of appeals recently noted:[4]

> The 1917 Manual stated:
> In trials by court-martial the good character of the accused, as evidenced by his reputation, may become of importance in four classes of cases: First, when the evidence of guilt is not strong evidence of the good reputation of the accused will strengthen the presumption of innocence.
> Para. 205, Manual for Courts-Martial, United States Army, 1917.

2. J. Wigmore, *A Treatise on the Anglo-American System of Evidence in Trials at Common Law* § 59 (3d ed. 1940).

3. *Cf. McCormick's Handbook of the Law of Evidence* § 191 at 455 (E. Cleary 2d ed. 1972).

Our own survey convinces us that the actual practice in the states has generally been to permit defendants to establish their character for lawfulness, and that the federal courts have unanimously assumed that to be the practice.

In *Michelson v. United States,* 335 U.S. 469, 476, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948), Justice Jackson pointed out in the majority opinion that the prosecution is not allowed to offer evidence of a defendant's bad general reputation unless he has put his character in issue; but he also explained that

> this line of inquiry firmly denied to the State is opened to the defendant because character is relevant in resolving probabilities of guilt. *He may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged.* This privilege is sometimes valuable to a defendant for this Court has held that such testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt and that in the federal courts a jury in a proper case should be so instructed. *Edgington v. United States,* 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467 [1896].

(Footnote omitted; emphasis supplied.) In *Michelson,* Justice Jackson also quoted "[a] typical examination in chief" of the character witnesses who had been offered by the defendant[5]; and this examination illus-

4. *United States v. Hewitt,* 634 F.2d 277, 280 (5th Cir.1981) (footnotes omitted). The Court of Appeals cites several cases to support its observation.

5. 335 U.S. 469, 471–72, 69 S.Ct. 213, 216, 93 L.Ed. 168 (1948). The quoted examination reads as follows:
   Q. Do you know the defendant Michelson?
   A. Yes.
   Q. How long do you know Mr. Michelson?
   A. About 30 years.
   Q. Do you know other people who know him?
   A. Yes.
   Q. Have you had occasion to discuss his reputation for honesty and truthfulness and for being a law-abiding citizen?

trates how character evidence was handled in federal criminal trials before the Federal Rules of Evidence took effect.

## II

To support the exclusion of the evidence offered by appellant to show that he was a person of law-abiding character, the Government now relies on Mil.R.Evid. 404(a), which prescribes when character evidence is admissible. According to the Drafters' Analysis, Mil.R.Evid. 404(a)(1), which "allows only evidence of a pertinent trait of character of the accused to be offered in evidence by the defense," makes

> a significant change from paragraph 138*f* of the [1969] Manual which also allows evidence of "general good character" of the accused to be received in order to demonstrate that the accused is less likely to have committed a criminal act. Under the new rule, evidence of general good character is inadmissible because only evidence of a specific trait is acceptable.

Analysis of the Military Rules of Evidence, Appendix 18, 1969 Manual, *supra*, Mil.R. Evid. 404(a)(1). The Government also insists that the reference in Mil.R.Evid. 404(a)(1) to "a pertinent trait of the character of the accused" was intended to impose a more rigorous requirement for reception of character evidence than would have existed if the rule had referred to a "relevant" trait. Otherwise, according to the Government, the Rule would have used the adjective "relevant," which has a meaning explained in Mil.R.Evid. 401.

In *Michelson,* the Supreme Court referred to its holdings that testimony as to a defendant's good character "alone, in some circumstances, may be enough to raise a reasonable doubt of guilt and that in the federal courts a jury in a proper case should be so instructed." 355 U.S. at 476, 69 S.Ct. at 218. Many years before, in *Edgington v. United States, supra* 164 U.S. at 367, 17 S.Ct. at 74, the Court quoted approvingly the observation of a state supreme court

that "[p]roof of ... [good character] may sometimes be the only mode by which an innocent man can repel the presumption arising from the possession of stolen goods. It is not proof of innocence, although it may be sufficient to raise a doubt of guilt." Our Court has adhered scrupulously to the same view that evidence of an accused's good character may raise a reasonable doubt as to his guilt. *See, e.g., United States v. Browning, supra.* In light of such precedents, it is hard to understand how evidence of a defendant's character as a law-abiding person—or, indeed, his general good character—would not be pertinent in the present case or, indeed, in almost any case that can be imagined. This seems especially true in light of the great weight which for decades has been attributed to character evidence in trials by courts-martial.

In construing Fed.R.Evid. 404(a), from which the corresponding Military Rule was derived, the Court of Appeals held in *United States v. Hewitt,* 634 F.2d 277, 280 (5th Cir.1981), that evidence of a defendant's "law-abiding" character should not have been excluded. Another Court of Appeals reached a similar conclusion in *United States v. Angelini,* 678 F.2d 380 (1st Cir. 1982). Thus, Federal precedents—which, while not binding, clearly are highly instructive—indicate that in the present case the military judge erred in ruling that appellant could not introduce evidence of his law-abiding character.

Furthermore, if Mil.R.Evid. 404(a) were applied as the Government would urge, a substantial constitutional issue would be raised. Under the guarantees of due process and the sixth amendment, a technical rule of evidence cannot be used to exclude highly material evidence. *Cf. Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (co-indictee incompetent as defense witness); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (voucher rule and hearsay rule applied to prevent cross-examina-

A. It is very good.
Q. You have talked to others?
A. Yes.

Q. And what is his reputation?
A. Very good.

tion of defense witness as to prior statements); *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (cross-examination of prosecution witness prohibited as to his probation for juvenile offense). Since character evidence can itself generate reasonable doubt, its importance cannot be denied. As has already been noted, this is especially true in trials by courts-martial because of the reliability of character evidence under the conditions that prevail in the military community.[6]

In some situations there are strong public policies that favor excluding certain types of relevant evidence. For example, Mil.R. Evid. 412 seeks to protect victims of sex offenses from undergoing at trial the trauma of inquiry into their past sexual history. In *Davis v. Alaska, supra,* the state was seeking to exclude certain otherwise relevant evidence in order to protect its juveniles. However, I can find very little support in public policy for applying Mil.R. Evid. 404(a) in a manner that would prohibit appellant from offering the evidence of his "law-abiding" character. I perceive no risk that the trial would be unduly delayed by the presentation of such evidence or that the court members would be confused.[7] In fact, time was wasted in the present trial while counsel and the judge split hairs as to the difference between evidence of appellant's "trustworthiness," which was admitted, and evidence of "his law-abiding" character, which was excluded.

In line with the Federal precedents, *see e.g., United States v. Hewitt* and *United States v. Angelini,* both *supra,* I concur with the principal opinion that the evidence of appellant's "law-abiding" character should have been admitted. Moreover, the rationale which I have employed leads me to the conclusion that Mil.R.Evid. 404(a) should not be interpreted to exclude evidence of an accused's "law-abiding" charac-

ter in any other trial by court-martial, and that, if it is so construed, it may well be unconstitutional.

In candor, I also must confess that I see very little difference between a person's being of "law-abiding" character and being of "good" character; and I suspect that over the years many witnesses who have testified about a defendant's "good" character really meant to say that he was "law-abiding." To say that the "goodness" of someone's character is a "trait" of his character may involve an unusual construction of the latter term. However, just as the Courts of Appeal in *Hewitt* and *Angelini* stretched "trait" to include "law-abiding" character in order to avoid an unjust—and possibly unconstitutional—result, I would take the same approach with respect to evidence of "general good character." Of course, under my view the scope of the Government's right to present rebuttal evidence would be co-extensive with the scope of the character evidence offered by the accused.

### III

The only issue that remains is to determine whether appellant was prejudiced by the exclusion of the evidence about his law-abiding character. In line with the precedents affirming that character evidence can suffice to raise a reasonable doubt, it would seem highly likely that the exclusion of character evidence would be prejudicial unless it was only cumulative. Since the judge allowed evidence of appellant's "trustworthiness" and even permitted some of the defense witnesses to relate specific instances of conduct which tended to support their favorable opinions, I have examined the record of trial to determine whether, in substance, appellant's evidence of his "law-abiding" character was before the court members for their consideration in

---

6. Moreover, evidence of his good character may be of special importance to a military accused since, due to reassignments or transfers of personnel, separations from the service, and other conditions encountered in the Armed Services, other prospective defense evidence may have become unavailable.

7. Of course, the Government has available several weapons with which to attack the evidence of good character if it so chooses. *See Michelson v. United States,* 335 U.S. 469, 471–72, 69 S.Ct. 213, 216, 93 L.Ed. 168 (1948).

determining his guilt or innocence. I conclude, however, that the limitations imposed on the defense by the judge's ruling affected appellant's cause adversely. Accordingly, I concur in reversing the decision of the United States Army Court of Military Review.

COOK, Judge (concurring in the result):

I concur that character for lawfulness is a "pertinent trait" within the meaning of Mil. R.Evid. 404(a)(1). *See United States v. Angelini,* 678 F.2d 380 (1st Cir.1982); *United States v. Hewitt,* 634 F.2d 277 (5th Cir. 1981). In addition, in view of the defense theory that appellant was acting legitimately in his role as a noncommissioned officer, I am persuaded that appellant's military character was "in issue" and "pertinent." However, I agree with Chief Judge EVERETT that decisions of Federal courts construing the Federal Rules of Evidence are highly instructive to, but not binding on, military courts construing the Military Rules of Evidence.