UNITED STATES

v.

Daniel J. WEEKS, 542 48 8750, Gunnery Sergeant (E–7), U.S. Marine Corps.

NMCM 82 5652.

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 27 May 1982.

Decided 30 Sept. 1983.

LCDR David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

Barton F. Stichman, Esquire, Civilian Defense Counsel.

MAJ E.D. Clark, USMC, Appellate Government Counsel.

Before ABERNATHY, Senior Judge, and GARVIN and BARR, JJ.

PER CURIAM:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer members of nine specifications of possession, transfer, and sale of marijuana in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. Appellant was sentenced to a dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for six years, and reduction to E–1. The convening authority approved the sentence as adjudged.

On 27 January 1982, 29 January 1982, and 4 February 1982, appellant sold 27.9, 29.6, and 215.4 grams of marijuana, respectively, to one Sergeant H, an undercover NIS informant at his off-base home in Triangle, Virginia. These three purchases by Sergeant H were "controlled buys": Sergeant H was searched prior to entering appellant's house and upon leaving the house. While he was inside the house NIS agents waited outside in a parked car. Appellant testified at trial, however, that he was not home on 27 January and that on the other two occasions Sergeant H merely visited him to pay him money that Sergeant H owed him for taped record albums. Appellant maintained that Sergeant H was lying in order to ingratiate himself with his command because he had come up positive for marijuana use on a urinalysis screening. Appellant theorized that Sergeant H must have hidden the marijuana either in the bushes in the front of appellant's house or in the garden in the back of the house, and then he must have taken the marijuana from its hiding place to the agents waiting in the parked car.

Appellant attempted at trial to introduce evidence, through both cross-examination and independent testimony, that Sergeant H had extensively used "speed", cocaine, and marijuana, and that he had sold these drugs to civilian and military personnel for nearly a year leading up to the time of the alleged offenses. Appellant contended that this evidence was admissible under Mil.R.Evid. 608(b) to impeach Sergeant H's credibility and also admissible under Mil.R. Evid. 608(c) to show Sergeant H's motive for testifying. The military judge would not allow appellant to introduce this evidence, and we see no reason to overturn his ruling. The key precondition for admissibility of specific instances of conduct to impeach credibility under Rule 608(b) is that the specific instances inquired into must be probative of truthfulness. It is well settled that incidents of past drug us-

age or sale do not necessarily demonstrate, absent unique circumstances, character for truthfulness. *See United States v. Pierce,* 14 M.J. 738 (A.F.C.M.R.1982) and cases cited therein at 740. Quite simply, since appellant cannot show any propensity for dishonesty on the part of Sergeant H through his past drug use, these specific instances of conduct can have no probative value as to his truthfulness. The evidence is, therefore, inadmissible under Rule 608(b).

As far as appellant's "motive" or "bias" theory under Rule 608(c) is concerned, we agree with the military judge that only drug incidents that Sergeant H believed the military authorities were aware of would be relevant, and hence admissible, to the issue of whether he was telling the truth. The right to confrontation and cross-examination is not without bounds or limits; rather, it is limited to that which is material, relevant, and probative. *See Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) and its progeny. Obviously, if Sergeant H was not aware that the military authorities suspected him of some drug crime, then he would have no reason to attempt to protect himself by working for NIS in exchange for favors regarding these crimes. Only those drug offenses which Sergeant H believed military authorities were aware of would cause him to have a recognizable motive to testify, in that if he cooperated and produced evidence on others, then charges against him would be dismissed. Absent such a recognizable motive, evidence of these specific instances of conduct was neither relevant nor probative to the issue of bias, but was rather mere speculation on the part of defense counsel. Thus, Rule 608(c) does not come into play. This assignment of error, therefore, is dismissed.

Appellant also argues that he should have been allowed at trial to introduce evidence of his good, law-abiding, military character. Prior to the change in the Military Rules of Evidence in 1980, such evidence was admissible. *See* paragraph 138*f*(2), *Manual for Courts-Martial, 1969 (Rev.)* (MCM). With the 1980 change, however, only "evidence of a pertinent trait of the character of the accused" is now admissible. Mil.R.Evid. 404(a)(1). The Drafter's Analysis to the rule makes clear that "under the new rule, evidence of a specific trait is acceptable." *Analysis of the Military Rules of Evidence,* Appendix 18–61, MCM. The pertinent or specific trait requirement, however, can include general military character under the *limited* circumstances wherein it evidences a pertinent trait of the character of the accused in light of the principal theory of the defense case. *United States v. Clemons,* 16 M.J. 44, 47 (C.M.A. 1983). In *Clemons* the accused was charged with larceny; although he admitted the taking of the items, he proclaimed that he did so (1) while in a duty status and (2) in order to teach the owners a lesson about securing their property. We agree with Judge Fletcher that, under the unique circumstances presented in *Clemons,* the good military character and character for lawfulness were pertinent traits of the accused in light of the defense theory of the case. The case under consideration is readily distinguishable from the unique circumstances of *Clemons.* The thrust of appellant's case at trial was that he was telling the truth and Sergeant H was lying. At trial, defense counsel sought to introduce evidence of appellant's good military character simply to bolster his client's standing before the members in the "credibility contest" with the government's chief witness (R. 44–45, 197–198). It is precisely this type of defense character evidence that the 1980 change to the Military Rules of Evidence was designed to bar from admissibility at trial. Good character evidence does not demonstrate that an accused would have been less likely to commit the offense charged.[1] We certainly see nothing to indi-

---

1. The relevancy of character evidence was precisely framed by L.C.J. Hyde in *Dover's Trial,* 6 How.St.Tr. 522, 539 (1663): "Do not mistake yourself. The testimony of your civil behavior, going to church, appearing in the trained bands, going to Paul's, being there at common service,—this is well. But you are not charged for this. A man may do all this, and yet be a

cate that appellant's good military character would establish that he would have been less likely to have sold marijuana. *See e.g. United States v. Belz,* 14 M.J. 601 (A.F.C.M.R.1982); *United States v. Cooper,* 11 M.J. 815 (A.F.C.M.R.1981). Unless a trial is limited in the manner envisioned by the 1980 change to Rule 404(a)(1)—and as interpreted by the majority of the Court of Military Appeals in *Clemons*—the ultimate issue regarding the operative facts determining guilt or innocence will be lost in a myriad of distracting and irrelevant side-issues of the accused's past life. Appellant's evidence of his good military character would not have added to the theory of his defense in any meaningful manner; accordingly, we find that the military judge ruled correctly in disallowing the evidence.

▆ The final issue on this appeal arises from appellant's pretrial confinement. Appellant had been initially confined on 16 February 1983, but was then released by a magistrate two days later. The next day, however, he was reconfined, and upon reconsideration, the magistrate reversed his earlier ruling and determined that appellant should be confined pending trial. The standard for review is whether the magistrate abused his discretion. We believe that he did. At the first hearing the magistrate determined that appellant was not a flight risk. At the second hearing the magistrate still believed that appellant was not a flight risk, but, based on additional evidence brought to his attention by two commanding officers at the Quantico Base, he believed that appellant might do some sort of harm to Sergeant H (whose identity the magistrate was not aware of). The following exchange at trial relates why the magistrate reversed his earlier ruling:

Q. Did you have an opportunity to determine what that additional information was?

A. Yes. I received another 72-hour letter, and in the letter the commanding officer was more specific this time, talking about the—again, the seriousness of the offenses, the drug climate here aboard MCDEC, and the involvement, alleged involvement of Gunnery Sergeant Weeks in this drug climate, and also the source, the witness, and the fear of the source's commanding officer that if Gunnery Sergeant Weeks was released he felt that at—there was a strong possibility that the witness could be intimidated or there could be some sort of retaliation.

Q. Are we talking here about facts he knew to be true, Major Kane, or are we talking about speculation.

A. Well, he is also the provost marshal, so I am sure he has a pretty good handle on the drug climate and what is going on, as far as that goes.

Q. I am not questioning that, Major Kane. But what I am questioning you is this. Was that speculation on his part, or were those facts that he knew to be true?

A. Well, the commanding officer of the source told—at least he said in the letter that he was afraid for the—for the source, that there would be some—he would meet with some sort of mishap.

Q. Did the commanding officer then—as you understand it, did he know that to be true, that this would in fact happen, was going to happen, or was he speculating?

A. I guess you could say it was speculative.

(R. 17).

Q. What is the criteria for reconfinement, Major, of your laws, your statutes, your—your instructions, I guess more appropriately, that you deal with? What is the basis, could you tell me?

A. Okay. Again, the—is the man a flight risk?

Q. Was he?

A. The first confinement hearing, I thought no. The second confinement

naughty man in printing abusive books, to the

misleading of the king's subjects."

hearing, the commanding officer wrote his letter in such a way that I felt there might be; however, I still don't think that that was the main reason that I kept him confined. The main reason I kept him confined is that I was afraid that if I would release him there was a possibility that the source could be intimidated. Obstruction to justice, whatever you want to call it. That is why I—

Q. And you stated before that that was speculation on your part.

A. Yes.

Q. Nothing indicating—nothing in Gunnery Sergeant Weeks's background or record that would indicate that, though, would it?

A. Negative.

(R. 23).

As appellate defense counsel points out in his brief, pretrial confinement can legitimately be imposed when a key witness fears the accused will harm him and the government puts forth evidence that this fear is justified. No such evidence, however, was presented in this case. Although information was brought to the magistrate's attention that a witness in another drug case had been threatened and assaulted, no articulable facts were presented by the government to substantiate the belief that Sergeant H would be in danger if appellant was allowed to go free. As the magistrate himself admitted, the possibility of obstruction of justice was nothing more than mere speculation. Since the magistrate reversed his earlier ruling on unsubstantiated speculation, he abused his discretion, and, as such, appellant must be credited for confinement served until the first day of trial—a total of 58 days.

■ Credit for confinement until the last day of trial—27 May 1982—however, is not appropriate. Although the military judge erred in not granting appellant the above 58 days credit, the military judge was acting within his bounds by not granting credit for the additional 42 days. Evidence was presented on the motion regarding this issue that on 6 April Sergeant H was threatened by an anonymous phone caller—though definitely not the appellant—with his life should he testify. Possibility had now risen to the level of articulable fact, and, as such, the military judge ruled entirely within his discretion that appellant should remain in pretrial confinement. It seems entirely reasonable to us that the military judge could rationally conclude that if appellant were to be released he would be in a position to obstruct justice by possibly communicating with whomever had threatened Sergeant H's life. The magistrate did not have the linking evidence to come to this conclusion; the military judge did.

Accordingly, the findings and sentence, minus 58 days credit on the confinement portion, as approved on review below are affirmed.