**UNITED STATES**

v.

**Ronald C. LUTZ, Radioman First Class, U.S. Coast Guard.**

**Docket No. 863.**
**CGCM 9977.**

U.S. Coast Guard Court of Military Review.

03 Aug. 1984.

Military Judge: CDR Kevin J. Barry, USCG.

Trial Counsel: LCDR Frank E. Couper, USCG.

Defense Counsel: LT Stanley T. Fuger Jr., USCG.

Appellate Defense Counsel: LT Keith M. Harrison, USCGR.

Appellate Government Counsel: LT Christena G. Green, USCGR.

## DECISION

CEDARBURG, Chief Judge.

Appellant, contrary to his pleas, was found guilty at a general court-martial comprised of officer members, of one specification of oral sodomy with a child under the age of 16, 3 specifications of lascivious acts with females under the age of 16 and 2 specifications of taking indecent liberties with females under the age of 16 in violation of Articles 125 and 134, UCMJ, 10 U.S.C. §§ 925, 934. He was acquitted of 1 specification of sodomy, and 6 specifications of lascivious acts charged under Articles 125 and 134, UCMJ. The military judge, on motion of appellant, also dismissed one specification of lascivious acts and one specification of indecent language alleged under Article 134, UCMJ.

Petty Officer Lutz was sentenced to a bad conduct discharge, confinement at hard labor for two years, forfeiture of all pay and allowances and reduction to the lowest enlisted pay grade.

Appellant assigns as error the following:

I

THE CONVENING AUTHORITY ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT AND ABUSED HIS DISCRETION BY DESIGNATING AS COURT MEMBERS OFFICERS FROM A GEOGRAPHIC LOCATION WHERE HOSTILITY TOWARDS THE APPELLANT WAS SO GREAT THAT THE DISTRICT LEGAL OFFICER IN THAT LOCATION REQUESTED THAT, DESPITE THEIR OBLIGATION TO REPRESENT UNPOPULAR CAUSES AND CLIENTS, NONE OF HIS STAFF ATTORNEYS BE ASSIGNED AS THE APPELLANT'S DEFENSE COUNSEL.

II

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT, AND PREVENTED THE APPELLANT FROM EFFECTIVELY DEFENDING HIMSELF AT TRIAL, BY NOT ALLOWING THE APPELLANT TO PRESENT CERTAIN EVIDENCE OF HIS GOOD MORAL CHARACTER, A TRAIT WHICH COULD HAVE RAISED REASONABLE DOUBTS CONCERNING THE TRUTH OF THE CHARGES MADE AGAINST THE APPELLANT IN THE MINDS OF THE TRIERS OF FACT.

Appellate defense counsel, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982) has invited our attention to the Article 38(c) UCMJ, 10 U.S.C. § 838(c), brief of trial defense counsel, expressly incorporating it into his appellate brief.

Appellant was charged with two counts of sodomy, one involving his daughter, age 10, and another involving a friend of his daughter, also age 10. He was also charged with 13 allegations of acts involving sexual improprieties with female children whose ages ranged from ten to twelve years. Eleven children, all of whom, including his own daughter, were dependents of Coast Guard personnel assigned to units located on Governors Island, New York,

allegedly were molested between March and June of 1982.

A motion was made in an Article 39(a), 10 U.S.C. § 839(a) session, prior to arraignment, for a change of venue, or in the alternative, that court members be chosen from commands not physically located on or nearby Governors Island. The specific issue now before the Court, questioning the exercise of discretion by the convening authority in choosing court members from Governors Island, was not raised. Evidence was presented by the defense in an effort to establish a general atmosphere of hostility or partiality such that the appellant could not receive a fair trial. Appellant, citing *United States v. Angeles,* 49 C.M.R. 90 (N.C.M.R.1974) and *United States v. Hedges,* 11 C.M.A. 642, 29 C.M.R. 458 (C.M.A.1960), contends that the evidence establishes that the convening authority abused his discretion in selecting court members from commands located at Governors Island.

The Government also presented evidence in an attempt to show a lack of pervasive interest in the case and hostility towards appellant in the Governors Island community.

The defense presented evidence as follows:

1. A stipulation of expected testimony of the District Legal Officer, Third Coast Guard District concerning a conversation between him and the Chief, Legal Administrative Division, USCG Headquarters in September 1982. The District Legal Officer expressed a preference for assignment of out of district defense counsel to represent appellant and another individual at Governors Island also charged with sexual abuse of children. The pertinent stipulated testimony was substantially as follows:

"... although I could assign two of my staff attorneys at Governor's (sic) Island to serve as detailed defense counsel, I preferred to have an attorney come from out of district to represent these accused because my attorneys have to live and work on Governor's (sic) Island. Acting as the defense counsel in this case may prejudice their positions of having to provide legal services to other commands on the Island."

2. A stipulation of expected testimony of Subsistence Specialist First Class Michael J. Lutz, USCG that he had received a total of 7 anonymous telephone calls at his place of duty on 2 days during a 10 day period in September 1982 at the time charges against appellant were being investigated. Subsistence Specialist Lutz, not related to appellant, answered the phone, "Governors Island Officer's Club, this is Petty Officer Lutz." The caller would say, "that's all I wanted to know".

3. The testimony of Lieutenant Commander Francis J. Winn, Jr., a psychologist with the Public Health Service. He testified that in his capacity as head of the psychiatric screening unit at Support Center, New York he had conducted a group session with the mothers of the daughters involved in both alleged sex cases and also conducted individual and therapy interviews. All of his observations of hostility towards appellant were derived from those clinical settings. Some people he interviewed were very angry, others were quite upset. No personal threats against appellant were made in any session although he alluded to non-specific threats which he explained as people projecting their feelings of anger, hurt and guilt. He expressed a belief that because of the small, tight-knit nature of the island people are generally aware of what other people are doing. Although he said Governors Island is a small tight-knit island where "things" spread very quickly he qualified his remarks by saying there is a small group of people among whom it spreads.

4. The testimony of Master Chief Machinery Technician Gary A. Fortner, USCG, Enlisted Advisor Third Coast Guard District. He testified Governors Island is approximately 225 acres in size. The military and dependent population had been reported as approximately 5,000, not all of whom live on the island, however. There are also about 1,000 civilian employees. He functioned as a counselor or military social

worker for his command. He keeps his finger on the pulse of the community and District. He had discussed the present case. One very close confidant has been his wife and he had also talked to the mother of one of the girls involved. The current cases had received more publicity than past courts-martial. His reaction to this and another sexual child abuse case has been to remain low-profile. There has been no publicity on television or newspapers to his knowledge. There is a segment of the island population which doesn't know anything about the case. More dependents have probably placed emphasis on the case than military personnel. His knowledge of the case had come principally through the "rumor mill". He found it rather hard to believe the whole island didn't know about the case; however it had been brought to his attention that there is a segment that has no knowledge or awareness.

The Government evidence consisted of the following:

1. The testimony of Commander Richard R. Boch, USCG. Commander Boch testified he was the accuser in appellant's case. He is the Executive Officer, Support Center, New York. He is not aware of any newspaper or television articles concerning the charges against appellant. He is aware that a petty officer, also named Lutz, had received calls of a threatening nature. No reports had been received of threats to the appellant. No one has discussed the Lutz case with him although it is common practice for island residents to discuss with him whatever is going on, even insignificant matters. There has not been the adverse reaction to both sexual abuse cases that he would have anticipated. He was made aware of the call of a threatening nature to Subsistence Specialist Michael Lutz. He has heard nothing since the original report and has heard of no other incident. Military personnel assigned to Governors Island also live on Staten Island and in extensive leased housing throughout the boroughs of New York.

2. Lieutenant Commander Craig Judd, USCG Public Affairs Officer, Third Coast Guard District. He testified he had received one non-specific inquiry from a reporter from the New York Daily News and advised the reporter that a child abuse case was under investigation. The reporter dropped the matter and there were no further inquiries.

3. The testimony of Lieutenant junior grade Darien Cilly. Lieutenant Cilly testified he lived in the BOQ on Governors Island, worked on the island, was involved with a scout troop and was familiar with building 877 (where the incidents were alleged to have happened). He had heard of no investigation into sexual child abuse on Governors Island.

4. A Stipulation of Fact as follows: Building 877 is a high rise apartment for Coast Guard personnel on Governors Island, N.Y.; there are 148 separate family housing units in the 11 story building; and, there are 719 housing units on Governors Island maintained by Coast Guard Support Center, New York.

■ The evidence presented on the change of venue motion at trial constitutes the evidence bearing on the current error assignment. The Government asserts that the doctrine of waiver dictates that the issue raised for the first time by appellant before this court should not be considered, citing *United States v. Crawford*, 15 U.S. C.M.A. 31, 35 C.M.R. 3 (C.M.A.1964). Although not specifically raised as an abuse of discretion at trial, we conclude the motion for a change of venue fairly encompassed the substance of the present error assignment and is one which we may appropriately consider. We note however, that the ruling of the military judge disposing of the change of venue motion, which we have determined was eminently correct under the facts developed and the extensive voir dire of court members, ordains that appellant's current contention must also fail.

■ The evidence at trial and the conduct of the voir dire simply failed to estab-

lish a pervasive, hostile atmosphere on Governors Island towards appellant at the time of the selection and seating of court members. In the absence of such a showing we cannot conclude that the convening authority abused his discretion in selecting court members from local commands.

Appellant, at trial and now before this court, relies heavily upon the stipulation of the District Legal Officer's testimony to establish, at least his perception of a hostile atmosphere on the island toward appellant. The conversation related by the District Legal Officer was only the expression of a preference for assignment of out of district defense counsel in two child sexual abuse cases. It was made shortly after his assignment in August 1982 to Governors Island and after preferral of charges but before the Article 32, UCMJ, investigation was convened. His concern that appointment of defense counsel from his limited staff of attorneys might prejudice their ability to effectively service other commands on the island was a reflection of an initial impression, taking into consideration the nature of the offenses. There was no showing that it had a foundation in the actual existence of a pervasive or hostile attitude toward appellant within the community at the time of the conversation or at the time of the actual selection of the court members.

There is no suggestion that attorneys on the district staff were either unwilling or unqualified to serve as defense counsel. Finally, contrary to appellant's assertion, there is no logical basis for concluding that the District Legal Officer ever conveyed his initial concerns over appointment of his subordinate attorneys to the convening authority who ultimately appointed the court-martial. Whatever concern the District Legal Officer had was obviously alleviated when appellant himself requested, on 7 September 1982, appointment of out of district counsel.

The military and dependent population of Governor's Island is substantial, a community in the range of 5,000. Geographically, it comprises 225 acres. The hostility to-

wards appellant described by Lieutenant Commander Winn originated with persons having a direct involvement in the allegation of sexual child abuse, not the community as a whole. There was no newspaper or television publicity about the case. Although the island community was tight-knit, the actual extent of knowledge of the sexual abuse charges was not clearly established and testimony and voir dire of court members demonstrated that some members of the community had no knowledge of the pending charges. The active "rumor mill" on the island was described as involving a small group of island residents, with dependents more interested in the case than military personnel. The telephone calls to Subsistence Specialist Michael Lutz occurred on but 2 days during a 10 day period in September and then stopped. Neither these calls nor the projection of anger, hurt or guilt related by Lieutenant Commander Winn could correctly be characterized as threats to do bodily harm to the appellant.

With the evidence in the above posture the military judge correctly denied appellant's motion for a change of venue and the alternative relief which requested that members be drawn from commands not located on or near Governors Island.

The real issue, as observed by the Military Judge, was whether the members appointed were disqualified to serve. He advised trial defense counsel that he was at liberty to renew his motion if warranted by circumstances later revealed during the conduct of the voir dire and later course of the trial.

Each court member was extensively questioned on voir dire. One hundred twenty pages in the trial record consists of voir dire of members. Trial defense counsel was particularly diligent in probing the outer limits of prospective court members' prior knowledge of the case, acquaintance with any of the participants and whether they lived or worked on Governors Island and would have been influenced in their decision on the case. No information was disclosed which would

have disqualified for cause any of the members. In fact, as a result of voir dire, no member of the court was even challenged for cause although the prosecution and defense each exercised a peremptory challenge. The appellant elected to be tried by members. The record is devoid of any substantial evidence for concluding that the convening authority abused his discretion in selecting court members from commands located at Governors Island. While administrative discretionary decisions, such as the selection of court-members, are reviewable for abuse, an appellate court must limit its review to patent abuses of that discretion. *United States v. Angeles*, 49 C.M.R. 90, 91 (N.C.M.R.1974). In determining whether there has been an abuse of discretion, the question is not whether the reviewing court agrees with the decision, but whether in view of the relevant rules of law applicable to the particular case and on due consideration of all the circumstances, the exercise of discretion was not one that reasonably could have been made. *See, United States v. Redding*, 8 M.J. 719, 722 (N.C.M.R.1979) remanded for further action, *United States v. Redding*, 11 M.J. 100 (C.M.A.1981). We are satisfied that the convening authority's decision to select court members from commands located on Governors Island was reasonable under the circumstances.

## II

Appellant, in his second assignment of error, contends the military judge erred to his substantial prejudice in disallowing the admission of certain evidence of his good moral character. He invites our attention to the record of an Article 39(a), UCMJ session, for the proposition that the military judge declined to accept the concept that good moral character was a specific character trait pertinent to the issue of whether appellant would sexually molest young girls. He also cites for our consideration, the ruling of the military judge not permitting Petty Officer Lutz to present evidence of his honesty and truthfulness and the declination to admit his performance evaluation marks on the merits of the case. Counsel cites *Edgington v. United States*, 164 U.S. 361, 363, 17 S.Ct. 72, 73, 41 L.Ed. 467 (1896); *Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948); *United States v. Conrad*, 15 U.S.C.M.A. 439, 35 C.M.R. 411 (C.M.A.1965); *United States v. Stanley*, 15 M.J. 949 (A.F.C.M.R.1983) and *United States v. Clemons*, 16 M.J. 44 (C.M.A. 1983). We note the Supreme Court cases cited were decided well prior to the effective date of the Military Rules of Evidence on 1 September 1980, which provided the basis for the rulings of the military judge. *United States v. Stanley, supra*, and *United States v. Clemons, supra*, were both decided after adoption of the Military Rules of Evidence and interpret M.R.E. 404(a)(1), which provides that evidence of a pertinent trait of character of the accused may be offered by an accused as an exception to the general rule that such evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that person acted in conformity therewith on a particular occasion. Subsequent to submission of the defense brief, the Court of Military Appeals decided *United States v. Piatt*, 17 M.J. 442 (C.M.A.1984) which also interpreted the admissibility of good character evidence in light of the adoption of the Military Rules of Evidence. *United States v. Stanley, supra*, relied extensively upon federal cases antedating the adoption of the Federal Rules of Evidence which became effective 1 July 1975. The Air Force Court of Military Review there held that good moral character (morality), citing *Harper v. United States*, 170 F. 385 (8th Cir.1909); *United States v. Michelson, supra*, and *United States v. Edgington, supra*, was a specific trait of character and admissible under M.R.E. 404. In *United States v. Clemons, supra*, and *United States v. Piatt, supra*, the Court of Military Appeals recognized that the common law made a distinction between general good character and particular traits of character. The Court of Military Appeals in *United States v. Piatt, supra* at 445 stated,

In the past, the general good character of an accused as a person was relevant fact to disprove criminal intent. See J. Wigmore, *A Treatise on the Anglo-American System of Evidence in Trials at Common Law* § 56(3) (3d ed. 1940); para. 138f, Manual for Courts-Martial, United States, 1969 (Revised edition). In addition, the general good character of an accused as a soldier was a fact relevant for this purpose. Wigmore (3d e.), *supra*, § 59; para. 138f, Manual, *supra*. [2] Under the Federal Rules of Evidence, a generally good character as a person is no longer a fact relevant for the above purpose. Instead, only a particular trait of such a character is admissible for this purpose and then only when this character trait is pertinent to a particular issue in the case. Fed.R.Evid. 404(a)(1); cf. *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). This rule was also adopted in Mil.R.Evid. 404(a)(1). However, the drafters of the new Military Rules of Evidence made clear that an accused's military character was not per se inadmissible at a court-martial under this rule. They said:

> Rule 404(a)(1) allows only evidence of a pertinent trait of character of the accused to be offered in evidence by the defense. This is a significant change from paragraph 138f of the present Manual which also allows evidence of "general good character" of the accused to be received in order to demonstrate that the accused is less likely to have committed a criminal act. Under the new rule, evidence of general good character is inadmissible because only evidence of a specific trait is acceptable. It is the intention of the Committee, however, to allow the defense to introduce evidence of good military character when that specific trait is pertinent. Evidence of good military character would be admissible, for example, in a prosecution for disobedience of orders.

Appendix 18, Manual, *supra.* In this context, a person's military character is

properly considered a particular trait of his general character and a fact which may be relevant at a court-martial depending upon the issue for which it is offered. *United States v. Clemons*, 16 M.J. 44 (C.M.A.1983).

■ We conclude that the Court of Military Appeals has clearly signaled that it interprets the adoption of the Federal Rules of Evidence and Military Rules of Evidence to have resulted in a significant departure from prior law which permitted introduction of evidence of generally good character. The law presently permits admission of only a *particular* trait of character and then *only* when this particular trait is *pertinent* to a particular issue in the case.

The military judge in this case was acutely aware of the new rules of evidence and of the intent of the drafters. He applied the same interpretation as the Court of Military Appeals to the rule in question. He expressed his understanding of M.R.E. 404 as follows:

> "... this is the end of the old rules, Mr. Fuger, and you have a problem. Under the new rules, general good character is clearly not admissible unless it is a specific character trait. Whether you can say that because it is an offense against morals that is charged, that therefore general good character becomes an issue- if that is your position, I am willing to go along with that if that is correct."

He subsequently reiterated his requirement that defense counsel demonstrate that the evidence intended to be introduced was both limited to a specific trait of character and pertinent by saying,

> "I would like it to be made more specific because the fact that I reject even before hearing the government's argument, I reject and will not accept the argument that general good moral character including every virtue that may be named, and you have named a half dozen of them, is pertinent to the issue of whether the Accused (sic) is the kind of a person who

would commit sex offenses on young girls."

Appellate Government counsel, in an excellent fashion summarizes the items offered into evidence which were not admitted by the military judge on the merits of the case. They accurately reflect the record.

DE–D Stipulation of Expected Testimony of Captain Gardiner Jacobs, MC, USNR

DE–E Stipulation of Expected Testimony of LTJG Mark Young, USCG—the following portions were excluded:

"I have always had the highest respect for RM1 LUTZ and have found him to be dependable, meticulous and clearly the best leading petty officer on board. He is a good leader and was always able to motivate his men. RM1 LUTZ could always be depended upon to do exactly what you wanted him to do"

"... who always wants to do the right thing in order that he can say it was done properly."

"I feel RM1 Lutz is of great value to the Coast Guard. If the Coast Guard lost him, it would be losing a valuable resource. If anything, RM1 Lutz is too modest about his achievements, he is the type of guy who can pull rabbits out of hat."

DE–F: Stipulation of Expected Testimony of Father James R. Meader

DE–I: Report of the Sanity Board Hearing in the case of RM1 Lutz dated 6 October 1982

DE–J: Marks Sheets-RM1 Lutz (Page 3306)—three sheets

DE–K: Stipulation of Expected Testimony of Mrs. Blanca Rodriquez—the following words were excluded:

"and seemed to be a decent man"

In each instance, we conclude the ruling of the military judge was correct.

■ Defense Exhibit D was offered to rebut the existence of a psycho-sexual dysfunction in the appellant. It was conditionally admitted at an Article 39(a) session prior to assembly of the court, subject to any evidentiary objection by the Govern-

ment. The Government did object to its admission as not being relevant. Ultimately, the exhibit was never read into evidence. Both Appellant counsel have been unable to bring to the court's attention a specific ruling on the admission of defense Exhibit D and the court has been unable to discover one. We will treat the evidence as having been excluded. The substance of Defense Exhibit D, the stipulated testimony of Captain Gardiner Jacobs, MC, USNR was

"On 24 September 1982 I examined RM1 Lutz as senior member of a Sanity Board convened at the request of the Commander, Third Coast Guard District. My examination revealed an alert, oriented, cautious but cooperative man with logical speech and no thought disorders. There was no evidence of severe mood disturbance, psychosis, depression, or organic brain impairment. Psychological testing performed by a clinical psychologist on my staff did not reveal anything unusual."

Trial defense counsel sought to have the stipulation admitted under M.R.E. 402 as relevant evidence, M.R.E. 404(a)(1) evidence of a pertinent character trait and M.R.E. 702, testimony by an expert. Defense counsel was unable to cite any specific case law to the military judge in support of his contention that the exhibit was admissible. We conclude that the military judge was correct in his belief that the exhibit failed to qualify as relevant testimony by an expert or evidence of a pertinent character trait. It merely provided a clinical impression that appellant, at an examination into his sanity, was normal. Despite his reservations about the stipulated testimony of Dr. Jacobs, the military judge admitted the results of psychological testing by Dr. Ahr, revealing no evidence of psychopathology, Defense Exhibit C. Likewise the extensive testimony of a defense psychiatrist, Dr. Gardner, rebutting the existence of any psycho-sexual disfunction in appellant was also admitted. We further believe that "... the trial judge could properly conclude that the [stipulated] testimony of the re-

quested [exhibit] would merely have been cumulative." *United States v. Credit,* 8 M.J. 190, 193 (C.M.A.1980). Like the Court of Military Appeals in *Credit,* we perceive no likelihood that the proferred evidence, on this record, could have affected the judgment of the court members.

■ The excluded testimony of Lieutenant junior grade Young and the performance evaluation sheets (Defense Exhibit J) were evidence of appellant's good military character. Evidence of good military character is admissible as a trait of character when pertinent to the charges under consideration. *E.g. United States v. Piatt, supra,* (where evidence that accused was a good drill instructor was pertinent to charges of maltreatment of recruits). *United States v. Piatt, supra,* and *United States v. Clemons, supra,* recognized that evidence of good military character is not *per se* inadmissible. But it is admissible only when that specific trait is pertinent. In each case however, "... the basic issue is whether the character trait in question would make any 'fact of consequence to the determination' of the case more or less probable than it would be without evidence of the trait." *United States v. Clemons, supra* at 47, citing *United States v. Angelini,* 678 F.2d 380 (1st Cir.1982) Thus, it is necessary to look at the theory of the defense and the offense charged.

■ The evidence of appellant's good military character has no particular pertinence to the determination of guilt of offenses involving sexual child abuse. Therefore the ruling of the military judge was correct and the evidence properly was excluded.

The stipulated testimony of Father James R. Meader, a Roman Catholic priest, (Defense Exhibit F) was offered as evidence of general good character and an upbringing such as to show appellant was a "good father". Its substance related to the priest's observation of appellant living in his parish as a boy in Louisville, Kentucky. Upon Government objection, the military judge observed that portions of the stipulated testimony might be admissible from a different perspective to show a reputation for honesty. The matter was not pursued and defense counsel subsequently stated his intention to use the exhibit for extenuation and mitigation only, obviating any issue at this level.

■ Likewise the defense sought to have admitted Defense Exhibit I, a report of a sanity board convened in accordance with paragraph 121, MCM 1969 (Rev.) on the basis of evidence of a pertinent character trait of appellant. The defense asserted that the "... absence of mental disorder, disease, defect, illness, whatever in this case, is pertinent to the Defense case because that is a key fact." The judge ruled that he would not admit it in its present form but did not preclude its introduction, limiting the content to the findings of the sanity board. He asked for citations of authority in support of consideration of the exhibit as evidence of a specific character trait. He suggested that if the report could be excised, he would consider admitting it. The record does not reflect a subsequent effort to reintroduce the exhibit. In any event, the excluded report of the sanity board was cumulative of the stipulated testimony of the psychologist, Dr. Ahr (Defense Exhibit C) and the testimony of Dr. Gardner. Appellant was not prejudiced thereby. *United States v. Credit, supra.* We note that defense counsel agreed to the excision of the words "seemed to be a decent man" from the stipulated testimony of Blanca Rodriquez (Defense Exhibit K). Consequently, no issue of improper exclusion remains as to that ruling. Having examined each item of evidence which was excluded at trial we are satisfied that appellant's contention that the military judge improperly excluded evidence of good moral character and good military character is without merit.

We note that the Court Martial Order is in error. The charge sheet was amended subsequent to the Article 32, UCMJ, investigation. Two deletions from specifications of Charge II, which were made prior to insertion of the charge sheet in the record, are not reflected in the Court Martial Or-

der. The words, "and by playing 'strip poker' with her," were deleted from specification 7. The words, "showing her X-rated pornographic films," were deleted from specification 8. The Court Martial Order should be corrected accordingly.

We have examined the record of trial, including the brief of trial defense counsel, and have concluded that no error materially prejudicial to the substantial rights of appellant was committed. The findings are correct in law and fact. We have specifically considered appellant's assertion that the sentence is inappropriately severe. Appellant stands convicted of one specification of oral sodomy involving a 10 year old child and 3 specifications of taking indecent liberties with children of tender ages.

While that portion of the sentence adjuding total forfeitures does have collateral consequences affecting his family, the sentence is clearly legal and appropriate for his repugnant conduct. Accordingly, the findings and sentence as approved on review below are affirmed.

Judges BURGESS, HOLLAND and BRIDGMAN concur.

Judge REINING concurs in the result.